𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

RUNKLE'S ADMINISTRATOR V. RUNKLE'S ADMINISTRATOR

AND OTHERS.

November 16, 1911.

Absent, Cardwell, J.

1. EQUITY—*Bill of Interpleader—Effect of Statutes.*—Statutes pro-
viding for interpleader proceedings, except where they enlarge
the rules governing bills of interpleader (and ours does not)
do not at all limit or affect the equitable jurisdiction by suit.
They merely furnish another special, cumulative and concur-
rent remedy.

2. EQUITY—*When a Bill of Interpleader May Be Filed.*—The equi-
table remedy of interpleader, independent of statute, depends
upon and requires the existence of the four following elements,
which may be regarded as its essential conditions: (1) The
same thing, debt or duty, must be claimed by both or all the
parties against whom the relief is demanded; (2) All their
adverse titles or claims must be dependent upon or derived
from a common source; (3) The person asking the relief (the
complainant) must not have nor claim any interest in the sub-
ject matter; (4) He must have incurred no independent lia-
bility to either of the claimants, that is, he must stand per-
fectly indifferent between them, in the position merely of a
stake-holder.

3. EQUITY—*Interpleader—Want of Privity.*—Where there is no
privity between the claimants, where their titles are independ-
ent, not derived from a common source, but each is asserted
as wholly paramount to the other, the stake-holder is obliged
to defend himself as well as he can against each separate
demand. A court of equity will not grant him an interpleader.

4. EQUITY—*Interpleader—Want of Privity—Independent Liability
to One of Claimants—Case in Judgment.*—Where a fund claimed
by two parties under independent titles, not derived from a

common source has been received by a bank as the debtor or bailee of one of the parties, it cannot maintain a bill of interpleader to settle the title thereto. There is both a want of privity between the opposing claimants, and an independent liability on the bank to one of them.

Appeal from a decree of the Circuit Court of Rockingham county on a bill of interpleader. From a decree in favor of Wm. J. Runkle's administrator, the administrator of Rebecca M. Runkle appeals.

*Reversed.*

The opinion states the case.

*H. W. Bertram,* for the appellant.

*Grattan & Grattan, Edward C. Martz, O. B. Roller* and *Charles A. Hammer,* for the appellees.

BUCHANAN, J., delivered the opinion of the court.

This is a bill of interpleader filed by the Bank of Elkton in which the personal representatives respectively of the estates of Rebecca M. Runkle, deceased, and of William J. Runkle, deceased, were made parties defendant. The trial court held that upon the evidence the bill of interpleader could be maintained, and that as between the parties claiming the fund the personal representative of. William J. Runkle was entitled to it, and so decreed. From that decree this appeal was taken.

The first question to be determined here is whether or not upon the facts disclosed by the record the bank can maintain its bill.

The record shows that William J. Runkle died on the 4th day of January, 1908, and his wife, Rebecca M., on the 12th day of the same month. After the husband's death and a few days before the wife's, she took from her bed and about

her person pocket-books and parcels containing money, which she directed her sister, Mrs. Louisa C. Davis, to place. in her (Mrs. Runkle's) trunk, lock it and keep the key. The day after the burial of Mrs. Runkle, I. L. Flory, the cashier of the Bank of Elkton, by request, came to the home of the deceased, counted the money placed in the trunk by Mrs. Davis, and carried it to his bank. At the time he received the money from Mrs. Davis he gave her a receipt or deposit slip in the following words:

"Received from the estate of Rebecca M. Runkle, by Louisa C. Davis, $2,668.20.

"I. L. FLORY, Cashier,"

and requested Mrs. Davis to come to the bank on the next morning, which she did, and he took up the receipt or deposit slip he had given her the day before and gave her a book with the following entry therein:

"THE BANK OF ELKTON,
Elkton, Va.

Dr.     In account with Mrs. Rebecca M. Runkle.     Cr.
1908.
Jany. 16, To Dep.                    $2,668.20."

A few days afterwards Mr. Flory, the cashier of the bank, qualified as the administrator of the husband's estate, and A. U. Lewis as administrator of the wife's estate, each claiming the money deposited in bank as the property of his decedent.

If there were no evidence in the case but the deposit slip and the entry in the bank book handed to Mrs. Davis when she delivered the money to the cashier of the bank, as to the circumstances under which the bank came into the possession of the money, it is clear that the bank had no sufficient ground upon which to maintain its bill. But it is claimed by the bank that the parol evidence in the case

shows that the money was delivered to it as a stakeholder, or as a joint deposit of both the husband's and the wife's estates, to be held by it until it was determined to which estate it did belong.

There is no question that after the death of the wife and before the money was delivered to the bank there was a controversy between Mrs. Long, one of the distributees of the husband's estate, and Mrs. Davis, one of the distributees of the wife's estate, as to the ownership of the money. Besides these two, four other persons testify as to the circumstances under which the money was delivered to the cashier of the bank. Mrs. Davis, who had been put in possession of the money by her sister and had consulted counsel and been advised to put the money in bank in her own name, testified that after the cashier had counted the money which she took out of Mrs. Runkle's trunk and handed him, he asked in whose name it was to be deposited, and she told him in her name until there was an administrator appointed for the wife's estate. She denied emphatically when asked the question, that she ever agreed that the money should be placed in the bank to see whose money it was. Mrs. Davis's son testified that after the cashier had counted the money and inquired of his mother what he must do with it, "she told him that she wanted it put in the bank for safe-keeping until there was an administrator appointed for Aunt Becca's estate"; and that the cashier thereupon wrote the receipt or deposit slip which he gave the witness's mother. Mrs. Smith states that when the cashier had counted the money Mrs. Davis told him that it would have to go in bank in her name. Mrs. Dean states that when the cashier asked in whose name the money should be placed in bank, "Mrs. Davis told him 'herself, of course.'" Neither Mrs. Long nor the cashier, Mr. Flory, the other two witnesses who testified to what was said and done when the money was delivered to the cashier, denied these statements of the other

witnesses as to how it was to be deposited in bank. On the contrary, Mrs. Long testified, among other things, as to what took place on that occasion as follows:

"Q. Did you hear what took place and what was said between Mrs. Louisa C. Davis and Mr. Flory? A. She told him to put the money in her name in the bank.

"Q. What else was said about it? A. I turned away and said, 'That is my brother's money.' . . .

"Q. And what did she say then? A. She said put it in her name, and I said no more."

Mr. Flory's evidence is very vague and indefinite as to what took place when the money was delivered to him. He not only does not contradict the statement of the other witnesses as to what Mrs. Davis said when she transferred the money from her possession to his, but says he does not remember precisely what the conversation was along that line. When asked if it was not agreed then and there that it should remain at his bank until the title was settled, he replied: "There was no agreement as to how long it should remain there or anything of the kind, as I understood it, but in my own mind it was put there until the matter was settled." While he states from what occurred on that occasion that he got the impression that the money was placed in the bank to be held by it until it was determined to whom it belonged, he does not state facts which would justify such a conclusion, and his conduct in entering it as a general deposit to the credit of Mrs. Runkle's estate, subject of course to the check of her personal representative when appointed, and using the money as the bank's own, as in the case of other general deposits, sustains the other witnesses as to the character of the deposit made and the circumstances under which the bank came into the possession of the money.

After a careful examination and consideration of all the evidence, written and oral, as to the manner in which the

bank came into the possession of the money, it does not ap-
·pear that the money was delivered to the bank as a joint
deposit of the estates of the husband and wife, or upon any
agreement that the bank should hold it as a stake-holder
until it was determined to which estate the money belonged.
But on the contrary it does appear that when Mrs. Davis
delivered the money to the cashier of the bank she intended
that it should either be placed or deposited in the bank in
her name until a personal represenative of her sister's estate
had been appointed, or to the credit of her sister's estate,
and that in fact as well as in form it was so delivered to
or deposited with the cashier of the bank.

The right to file a bill of interpleader does not lie in every
case where two or more persons claim the same thing, debt
or duty from a third person and he is in doubt as to which
of them he ought to render the debt or duty or deliver the
thing; but the jurisdiction of a court of equity to grant that
remedy independent of statute is confined in much narrower
limits.

Mr. Justice Story says, in his work on Equity Jurisdic-
tion, section 823, "That the remedy by bill of interpleader,
although it has cured many defects in the proceedings at
law, has yet left many cases of hardship unprovided for."

Again, in section 820, he says: "Whether it might not
have been more wise and more consistent with the prin-
ciples of equity originally to have held that in all cases
whatsoever, where the bailee was innocent and without
fault, he should have had the right to a bill of interpleader,
is a point into which it is now too late to inquire."

Section 2998 of the Code makes provision for a summary
proceeding by interpleader in a pending action, but there
was no action pending when this bill was filed, and it is not
a proceeding under that section. The statute can have no
effect upon the question we are now considering, for, as Mr.
Pomeroy says (sec. 1329), such statutes (except where they

enlarge the rule governing bills of interpleader, and our statute does not) it is universally held do not at all limit or affect the equitable jurisdiction by suit; they merely furnish another special, cumulative and concurrent remedy.

The right of the complainant to file its bill in this case must, therefore, be determined, without reference to our statute, by the principles or rules which govern courts of equity in granting the remedy of interpleader.

The general principles which govern a court of equity in administering relief in such cases seem to be pretty well settled.

In 4 Pomeroy's Equity Jurisprudence, sec. 1320, it is said, that "where two or more persons, whose titles are connected by reason of one being derived from the other, or of both being derived from a common source, claim the same thing, debt or duty by different or separate interests, from a third person, and he not knowing to which of the claimants he ought of right to render the debt or duty or to deliver the thing, fears he may be hurt by some of them, he may maintain a suit and obtain against them the remedy of interpleader." Substantially to the same effect is section 806 of Story's Eq. Jur.

In section 1322 of Pomeroy it is said: "That from the description in a previous paragraph and from the whole course of authorities, it is clear that the equitable remedy of interpleader, independent of recent statutory regulations, depends upon and requires the existence of the four following elements, which may be regarded as its essential conditions: 1. The same thing, debt or duty must be claimed by both or all the parties against whom the relief is demanded; 2. All their adverse titles or claims must be dependent upon or derived from a common source; 3. The person asking the relief—the plaintiff—must not have nor claim any interest in the subject matter; 4. He must have incurred no independent liability to either of the claimants—that is, he must

stand perfectly indifferent between them in the position, merely of a stake-holder."

Applying these principles to the facts of this case, it is clear that the right of the bank to file a bill of interpleader was lacking in both the second and fourth essential requirements, as laid down by Mr. Pomeroy. The second essential that there must be privity between the opposing claimants does not exist. The claims of the defendants were not dependent upon or derived from a common source. Their claim of title is independent of each other. One derives his title from the husband, and the other from the wife.

Mr. Pomeroy, section 1324, in discussing this essential, says: "Where there is no privity between the claimants, where their titles are independent, not derived from a common source, but each asserted as wholly paramount to the other, the stake-holder is obliged, in the language of the authorities, to defend himself as well as he can against each separate demand. A court of equity will not grant him an interpleader."

Upon this requirement, Mr. Justice Story says: "The true doctrine supported by the authorities would seem to be, that in cases of adverse, independent titles, the party holding the property must defend himself as well as he can at law; and he is not entitled to the assistance of a court of equity, for that would be to assume the right to try merely legal titles upon a controversy between different parties, where there is no privity of contract between them and the third person who calls for an interpleader." 2 Story's Eq. Jur., sec. 820 (11th ed.). See also *Northwestern Mutual Life Ins. Co.* v. *Kidder,* 162 Ind. 382, 70 N. E. 489, 66 L. R. A. 89, 1 Am. & Eng. Ann. Cases, 509, and note p. 513, in which many cases are cited sustaining the rule as laid down by Pomeroy and Story.

The fourth essential condition to filing such a bill, as stated by Mr. Pomeroy, is that the complainant must be

under no independent liability to either claimant. Upon that question he says: Such an independent liability may be incurred in two classes of cases, "(1) in the first place, the agent, depositary, bailee or other party demanding an interpleader, in his dealings with one of the claimants may have expressly acknowledged the latter's title, or he may have bound himself by contract, so as to render himself liable upon such independent undertaking, without reference to his possible liability to the rival claimant upon the general nature of the entire transaction. Under these circumstances, as the plaintiff is liable at all events to one of the defendants, whatever may be their own respective claims upon the subject matter as between themselves, he cannot call upon them to interplead. He does not stand indifferent between the claimants, since one of them has a valid legal demand against him at all events. Even if the acknowledgment or promise has been obtained by fraud or mistake, the right of the party thus deceived to be relieved in equity from his liability cannot be considered and sustained in an interpleader suit. (2) In the second class of cases, the independent liability of the plaintiff to one of the defendants arises from the very nature of the original relation subsisting between them, without reference to any collateral acknowledgment of title or promise to be bound. The most important examples of such relations are those subsisting between bailee and his bailor, or agent or attorney and his principal, a tenant and his landlord, and the like. In pursuance of the doctrine above stated, if a bailee is sued by his bailor or an agent of his principal, or a tenant by his landlord, and at the same time a third person asserts a claim of title adverse and paramount to that of the bailor, principal or landlord, a suit of interpleader cannot in general be maintained against the two conflicting elements, since from the very nature of the relation there is an independent personal liability with respect to the subject matter of the bailee to the bailor, of the agent to his principal, and of the

tenant to his landlord." .4 Pomeroy's Eq. Jur., sec. 1326. See also 2 Story's Eq. Jur., secs. 817, 817-a, 817-b.

There are some exceptions to the general rule as above stated, as where the title of one of the adverse claimants is derivative and not antagonistic and paramount to the bailor, principal or landlord. 2 Pom. Eq. Jur., sec. 1327; 2 Story's Eq. Jur., sec. 817.

This case is not within any of the exceptions. The bank, as we have seen, came into the possession of the money either as debtor to or bailee of Mrs. Runkle's estate, and whether it holds it as debtor or bailee it is under an independent liability to her estate, and upon that ground as well as upon the ground of the want of privity between the opposing elements, the bank was not entitled to maintain its bill of interpleader.

The decree complained of must be reversed, and this court will enter such decree as the circuit court ought to have entered, dismissing the bill for want of jurisdiction.

*Reversed.*