# Wytheville.

## Metropolitan Life Insurance Company v. Mary L. Botto.

June 14, 1928.

The opinion states the case.

*Wellford & Taylor*, for the plaintiff in error.

*Thos. A. Williams* and *L. C. O'Connor*, for the defendant in error.

CAMPBELL, J., delivered the opinion of the court.

Mary L. Botto, plaintiff in the court below, filed her notice of motion to recover the sum of $1,000.00, alleged to be due her as beneficiary under a policy of insurance issued by the Metropolitan Life Insurance Company upon the life of her husband, William Joseph Botto. There was a trial by a jury, which found a verdict for the plaintiff, and judgment was entered thereon by the court.

The facts relied upon by the plaintiff, as shown by the record, are as follows:

The plaintiff, Mary L. Botto, was the wife of William J. Botto, insured by the defendant in the amount of $1,000.00, and beneficiary under the said policy. On January 5, 1919, Sunday, the insured, dressed in his usual working clothes as a lineman, with his tools and the spikes on his feet as an electrical worker, bade his family good-bye to go back to his work in North

Carolina; one of his little daughters was to have a birthday four days thereafter, and he promised to bring her a pony on his return home. He left his family in the best of spirits, and the family relations between wife, husband and children were entirely perfect. The insured was under no financial stress or trouble, nor was there any other cause for not returning home, or not giving some account of his whereabouts. Upon bidding his family good-bye, he left to go to his work in North Carolina, and from that time on his wife and children heard no word of his whereabouts, received no information from any source. All premiums were promptly paid upon the policy of insurance and it was in force at the time this suit was instituted. All due and proper inquiries and investigations were made by and with the aid of proper authorities, in an effort to locate the insured, but without success.

The plaintiff employed counsel, and on January 21, 1926, more than seven years after the disappearance of William Botto, the insured, defendant was requested to furnish blanks for proof required by the policy to be filed with the defendant. Again, on May 21, 1926, defendant was requested to furnish said blanks, which it refused to do. On January 21, 1927, defendant was again requested to furnish said blanks and refused to do so. Suit was filed in March, 1927, by the plaintiff against defendant.

The defendant introduced as witnesses in the trial Thomas Botto and Mrs. Margaret Hirshberg, brother and sister of the insured, who testified that the insured was seen alive by them in the year 1925.

To determine the correctness of the judgment of the lower court requires a consideration of section 6239 of the Code of 1919, as amended. Michie's Code, 1924, section 6239. The pertinent part of this statute

is as follows: "If any person, who shall have resided in this State, go from, and do not return to the State for seven years successively, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

Plaintiff bases her right to recover upon the presumption of death, arising out of the statute, after an absence from the State for a period of over seven years, without any tidings from the insured. The contention of the defendant is that the presumption of death is rebuttable and that it has fully met this presumption by the introduction of evidence that the insured was alive during the seven year period.

In *Evans* v. *Stewart, etc.*, 81 Va. 738, it is held that a person who absents himself from the State for over seven successive years is presumed to be dead, and the party asserting he is living must prove it.

In *Magness* v. *Modern Woodmen*, 146 Iowa 1, 123 N. W. 169, it is said: "The presumption of death from long absence is of course not conclusive; but when it is shown to have continued for seven years or more unaccompanied by circumstances which reasonably account for his disappearance on a theory not involving his death, it becomes sufficiently strong to cast the burden of rebutting it upon the party asserting the continuance of life. 3 Elliott's Evidence, paragraph 2010; 1 Greenleaf Evidence, paragraph 41; *Cowan* v. *Lindsay*, 30 Wis. 589. Slight evidence may sometimes be sufficient to rebut the presumption of death; but ordinarily it is a question for the triers of fact to determine whether the presumption shall prevail. In short, the circumstances both for and against the theory of death are to be taken into consideration, and therefrom the truth arrived at as nearly as may be possible under

the established rules of law governing the adjudication of disputed facts."

In our opinion, the plaintiff, upon whom rested the burden of meeting the statutory requirements, has successfully borne the same. Upon the close of the plaintiff's case, had the defendant been content to submit the case to the jury, there could have been but one result—a verdict for the plaintiff—upon which the court would have been warranted in entering judgment. The same result would have followed if a demurrer to the evidence had been interposed by the defendant.

■ To overcome the presumption of death, after continued absence for a period of seven years, the burden was upon the defendant to introduce proof satisfactory to the jury that during the seven year period the insured was alive. This the defendant claims to have done. Let us, therefore, look to the evidence to ascertain if the jury were warranted in finding a verdict contrary to it.

Thomas Botto, a brother of William J. Botto, the insured, testified that he saw the said William J. Botto twice in the year 1925, at an address on Pearl street in the city of Baltimore; that on both occasions the said William J. Botto was in good health; that he had never had inquiry made of him by Mrs. Mary L. Botto, or anyone in her behalf, as to the whereabouts of said William J. Botto, and that he did not volunteer any information to Mrs. Mary L. Botto for the reason that she was not on good terms with him or his family; that had he been asked by her anything about William J. Botto, he would have furnished the information requested; that at the time of his father's death in 1923, an attempt had been made to locate William J. Botto, which was unsuccessful, and that said William J. Botto was not present at his father's funeral.

On cross-examination, Thomas A. Botto testified further that he did not tell William J. Botto's wife that he had seen Mr. Botto in Baltimore in 1923 or in 1925, or tell anyone outside of the family this fact; that his father died in 1925, on Thanksgiving Day, and that William J. Botto did not attend the funeral of his father. He further testified on cross-examination that the second time he saw Botto in Baltimore was on Pearl street; he thought it was 204 or 402 (he thought 204). When he was asked what Botto was doing, he said he was not doing anything; that he was dressed pretty well and looked all right, clean shaven; and that he was sure that it was his brother William. When asked why he did not notify William J. Botto's wife of these facts, he stated that "she did not speak to me, or have anything to do with me, and I did not have anything to do with her." He was asked if he was not the uncle of William J. Botto's two little girls, and if he did not have interest enough in them to report this matter, if it were true, to the children or their mother, and he stated he did not. He further testified that he could not tell what William J. Botto was doing in Baltimore. When asked why William J. Botto did not come to his father's funeral, if he was alive, this witness said he could not tell why. He stated that 204 Pearl street was a restaurant in front, and that he stayed with William J. Botto three or four hours.

Mrs. Margaret Hirshberg then testified that she was the sister of the insured, William J. Botto; that she resides at No. 2401 east Grace street, and was residing there at the time her brother, William J. Botto, left on January 5, 1919, and that he then resided at No. 2516 east Grace street; that early in the year 1925, she received news through a friend that her brother, William J. Botto, was desperately ill in the city of

Baltimore; that she went there to see him; that she stayed in Baltimore about two weeks and saw him several times; that the report as to his severe illness was not correct, and that when she saw him he was in good health and was living on Pearl street, she thought 204 or 208, she had forgotten which; that she had not furnished information to Mrs. Botto, but would have had Mrs. Botto approached her and asked for same; that she received a letter from Mrs. Botto's lawyer inquiring as to the whereabouts of the said William J. Botto, and that she answered said letter, stating that she had seen him alive in the early part of the year 1925; that no further inquiry was made of her in this connection and that she and Mrs. Botto were not on good terms; that she had received a letter from her brother about three months ago.

On cross-examination, Mrs. Hirshberg stated that at the time she saw her brother at the address on Pearl street she did not go into the house, which in front was a restaurant, but that her brother saw her when she approached the building and came out to meet her and that they stood on the corner and talked. She stated that she got her information as to his whereabouts from somebody at Curtis Bay; that he had lived at Curtis Bay and that the people there told her where to find him. She further stated that she had a friend living in Baltimore, Mrs. Richard Townsend, P. O. R. F. D. No. 6, Baltimore. She stated further that she did not give this information to plaintiff because plaintiff had not requested it of her. She was asked who else besides the family knew anything about where Botto lived, and answered: "Many of his friends," but she apparently could not name one who did know. She further said that she did not advise Mrs. Mary J. Botto, the plaintiff, or her children, that she had com-

municated with William J. Botto, or that William J. Botto had communicated with her. She was asked if she was not the aunt of his two little girls and she admitted that she was, and was asked if she did not have enough interest in them to advise them of his whereabouts, and she said she did not. This witness admitted that she had not given any person his address, or given the information to his wife and children.

After so long a separation from their brother, the meeting described by these two witnesses seems grotesque. Neither of them could tell his correct address, his occupation, or repeat one word that would throw light on the question of his disappearance. As far as the record shows, this brother and sister did not communicate the fact of their brother's presence in Baltimore to anyone. Mrs. Hirshberg, during her examination, stated that she had received a letter from the insured about three months prior to the trial. This letter, properly authenticated, would no doubt have settled the question in issue, but it was not produced or its absence accounted for. Both Botto and Mrs. Hirshberg testified that they were not on "speaking terms" with the plaintiff. This fact the jury had a right to consider in determining whether or not they were biased or prejudiced.

In addition to the two witnesses mentioned, the defendant introduced Frank Richeson, who testified that he is a notary public in the city of Richmond, Virginia, and was such November 3, 1919; that on that day a man was introduced to him in the city of Richmond as William J. Botto, and that he then, at said man's request, as notary public, took an acknowledgment of his signature to a paper writing then and there produced; that he did not personally know William J. Botto, but that his certificate of acknowledgment which was on the paper produced was genuine.

In rebuttal, the plaintiff testified that the purported signature of her husband on the assignment was not his signature. No sur-rebuttal evidence was offered by the defendant to sustain the alleged signature—a pregnant circumstance when it is shown by the record that the brother and sister of the insured were shown the alleged signature in the presence of the jury and were not called as witnesses to sustain it.

There is another consideration which no doubt influenced the verdict of the jury. Introduced in evidence was a letter, dated February 10, 1927, written by the assistant secretary of the defendant to counsel for plaintiff, which contained this language:

"We have your letter of January 21 regarding the above case.

"The home office inspector to whom we delegated this case for investigation last summer after calling at your office with regard to it; located and interviewed the insured under the policy who readily admitted his identity. In view of this development, there is no presumption of death."

Also a letter dated February 21, 1927, written by the assistant secretary to the counsel for plaintiff was introduced, which is as follows:

"Replying to your letter of February 21.

"We are not aware that we are under obligation to disclose to you the whereabouts of the insured or where our inspector saw and conversed with him. Our efforts to locate him involved considerable expense. We believe that similar investigation on your part may result as successfully.

"We see no reason to modify the advice previously communicated to you that there is no presumption of death in this case."

It was in the power of the defendant to have

established the truth of these statements by the introduction, as a witness, of the agent who "had located and interviewed" the insured. From its failure to produce this witness, or to account for his non-production, the jury were warranted in drawing the conclusion that the witness, if produced, would not support the allegations contained in the letters. *Chahoon's Case*, 20 Gratt. (61 Va.) 742.

While the defendant practically concedes that the jury are the triers of fact, it is most strenuously urged that they are bound by the testimony of their unimpeached witnesses. It is true as a general proposition that the evidence of an unimpeached witness, if not inherently incredible, should be believed; but the fact that a witness has not been impeached—employing the term in its common acceptation—is not conclusively binding upon the jury. The jury are the judges of the credibility of the witness and they have the right to determine from his appearance on the stand, his manner of testifying, his candor and fairness, his contradictions, if any, what weight shall be given to his evidence. *Horton's Case*, 99 Va. 855, 38 S. E. 184.

In Wigmore on Evidence, section 2034, it is said: "The mere assertion of any witness does not of itself need to be believed, even though he is unimpeached in any manner; because to require such belief would be to give a quantitive and impersonal measure to testimony."

In *Charleston Ins., etc., Co.* v. *Corner*, 2 Gill (Md.) 411, the syllabus of the case states: "The jury have the power to refuse their credit to parol testimony, and no action of the court should control the exercise of their admitted right to weigh its credibility." *Conrad* v. *Williams*, 6 Hill (N. Y.) 444.

In *Clopton's Case*, 109 Va. 818, 63 S. E. 1023, Judge

Keith quotes with approval the rule laid down in Proffatt on Jury Trial, section 363, which is as follows: "The general rule, that where unimpeached witnesses testify positively to a fact, and are uncontradicted, the jury are not at liberty to discredit their testimony, is subject to exceptions; as, where the statements of the witness are grossly improbable, or he has an interest in the question at issue. However well settled the rule may be that the credibility of a witness is for the jury, the judge has power to instruct them as to what circumstances are to be unfavorably considered in their estimation of his evidence. So the testimony of a witness may be wholly rejected by a jury, if from his manner and the improbability of his story or his self-contradiction in the several parts of his narrative, the jury become convinced that he is not speaking the truth; and this is true although he be not attacked in his reputation, or contradicted by other witnesses."

In *C. & O. Ry. Co.* v. *Barger*, 112 Va. 692, 72 S. E. 695, it is said: "A jury is not bound to accept as conclusive the testimony even of an unimpeached witness."

Tested by the foregoing doctrine, it is manifest that the action of the trial court in overruling the motion to set aside the verdict of the jury and in refusing to enter judgment for the defendant, is without error.

It is also assigned as error that the trial court erred in refusing to give the following instructions asked for by the defendant:

"1. The court instructs the jury that if suit was brought before satisfactory and sufficient proofs of the death of the insured were furnished to the Metropolitan Life Insurance Company, then they must find for the defendant.

"2. The court instructs the jury that the statements

set forth in letters from Thomas A. Williams to the Metropolitan Life Insurance Company and verbal assertions made by him to A. R. Blue, the company's superintendent in this city, are not satisfactory or sufficient proofs of the death of the insured as is contemplated by the policies sued on in this court; and unless the jury believe from the evidence that further proof of the death of the insured was furnished the defendant before this suit was brought, then they must find for the defendant."

These instructions sought to impose upon the jury the duty of determining the sufficiency of the proof of death, as a condition precedent to the right of action. No error was committed by the court in this regard. It was the province of the court to determine the question.

In *Security Bank* v. *Equitable Life Society*, 112 Va. 468, 71 S. E. 649, 35 L. R. A. (N. S.) 159, Ann. Cas. 1913-B, 836, Judge Keith, dealing with a similar question, said:

"One of the principal controversies raised in the case is whether or not the preliminary proofs of death are to be passed upon by the court as constituting a condition precedent to the right to bring suit, or whether it is for the jury to determine whether or not they comply with the provisions of the policies, which required the plaintiff to furnish satisfactory proofs of death of the accused.

"We are of opinion that the weight of authority imposes the duty upon the court to determine, in the first instance, whether or not the proofs are satisfactory."

The last assignment of error calls in question the action of the trial court in refusing to grant defend-

ant a new trial on the ground of after-discovered evidence. It appears that after the trial of the case and after judgment was entered, the defendant in open court filed the affidavit of J. McD. Wellford, which set forth the following:

"I, J. McD. Wellford, counsel for the defendant in the case of '*Mary L. Botto* v. *Metropolitan Life Insurance Co.*,' do make the following affidavit: That subsequent to the trial of this case, at four o'clock in the afternoon of July 8th, I was called up on the telephone by Sergeant Frank I. Gentry of the Richmond police force, who then advised me that he had seen and talked with the insured, William J. Botto, in the year 1926; that he had known said William J. Botto all his life and that there could be no mistake as to identity. That by no reasonable diligence on my part, or on the part of the defendant company, could this evidence have been secured prior to the trial of the case inasmuch as neither I nor said defendant company had any knowledge that Sergeant Gentry knew the insured or had seen him in 1926. That said evidence is material in its object and such as ought, on another trial, to produce an opposite result on the merits; and that said evidence is not merely cumulative or collateral."

Two witnesses testified upon the trial that they had seen the insured alive. The defendant was afforded the opportunity to put upon the witness stand its agent who "had located and interviewed" the insured, but declined to accept the same. The evidence set forth in the affidavit was cumulative and corroborative. The plaintiff testified in the inception of the case that she had appealed in vain to the police department of the city of Richmond to ascertain the whereabouts of her husband. In the exercise of that diligence which the law requires of a litigant it seems to us that the in-

vestigator of the defendant would have made some inquiry of the police sergeant as to the disappearance of the insured. Failing in this, we are unable to say that proper diligence has been exercised.

As a general rule, the courts do not look with favor upon motions to grant a new trial on the ground of after-discovered evidence. Especially is this true where litigants have had—as they have in this case—an opportunity to fairly present their case to the jury.

Upon the whole case, we are of opinion that the question in issue was a jury question, which has been fairly submitted to the jury, and the verdict of the jury should not be disturbed.

## ON REHEARING.

### Richmond.

#### November 12, 1929.

This day came the parties, by counsel, and on motion of the defendant in error, it is ordered that the verdict and judgment be set aside, and this cause is remanded to the Law and Equity Court of the city of Richmond, Part II, for retrial by the court and jury on the single issue whether the insured, William J. Botto, was alive at any time during the period of seven years prior to the commencement of this action, with the burden of proof upon the plaintiff in error to prove that fact, and that the defendant in error do recover of the plaintiff in error her costs in this behalf herein expended.

Which is ordered to be certified to the said Law and Equity Court of the city of Richmond, Part II.

*Remanded.*