# Wytheville

## EVELYN D. GOODLOE v. R. H. SMITH.

June 16, 1932.

Present, Holt, Epes, Hudgins, Gregory and Chinn, JJ.

The opinion states the case.

*George E. Haw* and *William C. Miller, Jr.*, for the plaintiff in error.

*Leon M. Bazile*, for the defendant in error.

CHINN, J., delivered the opinion of the court.

R. H. Smith, the defendant in error here, brought this action by notice of motion to recover judgment against the plaintiff in error, Evelyn D. Goodloe ("sometimes known

as Mrs. C. L. Goodloe") as maker of a negotiable note for $495.00, dated October 1, 1927, and payable to Gilpin-Smith Electric Corporation, or order, thirty days after the date thereof, at the Hanover Bank, Ashland, Virginia.

The note upon which the action is based bears the endorsement of the payee, and the plaintiff alleges in his notice that the same was negotiated to him by the said payee before it was overdue; that he took it in good faith and for value; and that at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it.

The defendant plead the general issue, and filed two special pleas setting up, in substance, the following defenses:

1.   That plaintiff took the note sued on after maturity and with actual knowledge of infirmities existing therein.

2.   That the consideration for said note was a refrigerating machine purchased by the defendant from payee, which afterwards proved to be worthless; "and that after said machine proved to be utterly worthless, and that after said note had become due and the defendant had refused to pay the same," said note was turned over to the plaintiff by said payee for collection, the plaintiff having at the time full knowledge of the above facts; 'wher'efore and by reason whereof the defendant says further that she is not indebted to the plaintiff in any amount on account of the note sued on, as there had been a total failure of consideration therefor."

The issues made by the pleadings were submitted to a jury, which returned a verdict for the defendant, but the court set aside the verdict and entered judgment for the plaintiff for the full amount of the note sued on, with interest.   Complaining of this action of the court, the defendant below has brought the proceedings before us for review.

The first question to be considered is whether or not the

court should have sustained plaintiff's motion to set aside the verdict as contrary to the law and the evidence. Since the evidence adduced at the trial is certified in condensed form and it all seems more or less pertinent, for convenience we will quote it as it is stated in the record.

"Richard H. Smith, the plaintiff, testifying on his own behalf, stated that he was the owner of the note for $495.00 sued on; that he purchased it from the Gilpin-Smith Electric Corporation on the 14th day of October, 1927, for value and that he had no notice of any defect in or objection to the note or to the machine for which it was given, although after its purchase and before the note was payable he was informed that there was some trouble; that he took the note in good faith and that at the time it was negotiated to him he had no notice of any infirmity in the note or defect in the title of the Gilpin-Smith Company, and that the machine needed some adjustments. He introduced the note in evidence.

"He also introduced in evidence his check for $1,200.00 dated October 14, 1927, which was endorsed by Gilpin-Smith Company, payable to Gilpin-Smith Electric Corporation, which he stated was given in payment of the purchase price of the note in question and other notes; however, he could not recall the other notes purchased, they having been paid. On cross-examination he was asked had he not written a letter to Mrs. Goodloe with reference to the note, which he admitted and the letter was introduced in evidence:

"Richmond, Virginia, September 12, 1928.
"Mrs. C. L. Goodloe,
"Henry Clay Inn, Ashland, Virginia.
"Dear Madam:
"The Gilpin-Smith Electric Corporation assigned to me your note for $495.00 in October, 1927, but at their request I did not call for payment, they explaining that the re-

frigerating system had not been working satisfactorily. They now advise me that they consider their part of the work to be satisfactory.

"I therefore have to request that you arrange to pay me the amount of the note which I hold.

"Very truly,

"RICHARD H. SMITH.

"He stated that he meant by the word 'assigned' used in the letter that he was a purchaser of the note before maturity, not after and said that he did not mean in the letter to say that he had notice of trouble with the machine before he bought the note but that he received his notice after its purchase but before the note fell due. He further testified that he knew Mrs. Goodloe and husband as they had dealt with his bank and that because of this he did not push the matter.

"Evidence introduced on behalf of the defendant:

"It is agreed between counsel for the plaintiff and defendant that Evelyn D. Goodloe bought in August, 1927, of the Gilpin-Smith Electric Corporation a refrigeration machine to be placed in a Seegar ice box at the price of $570.00 to be paid for $25.00 cash, $50.00 on October 1, 1927, and $495.00 by note due November 1, 1927. That before the note fell due it was found that the machine was defective and it eventually proved worthless and that there was an entire failure of consideration on the part of the Gilpin-Smith Electric Corporation.

"Further the defendant introduced the following evidence:

"That from the time the machine was purchased until its use was discontinued she was in frequent communication with the Gilpin-Smith Electric Corporation and refused to pay either the $50.00 payment or the $425.00 note on account of the condition of the machine. That the first she knew of Richard H. Smith in the matter was when he

wrote to her the letter filed with his evidence and she, supposing that he was acting for the Gilpin-Smith Electric Corporation, replied to the corporation declining to pay the note. She testified on cross-examination that she did not know what the Gilpin-Smith Company did with the note or when they parted with title to it. She also introduced in evidence two letters written to her by the Gilpin-Smith Electric Corporation, in which letters said corporation represented itself as the holder of the note:

"Richmond, Virginia, November 29, 1927.
"MRS. C. L. GOODLOE,
"c/o Henry Clay Inn, Ashland, Virginia.
"Dear Mrs. Goodloe:

"In reference to your Lipman plant our Mr. C. D. Parrish reports that he took out an experienced refrigeration engineer to inspect your machine about two weeks ago. He checked over the machine and box and called your attention to the fact that the doors of the box were not closing properly. Mr. Goodloe stated at the time that he would take this matter up with the Straus Company as soon as he returned from Baltimore and have the box repaired.

"We will be obliged if you will advise us if this has been done and also advise us how your machine is operating at present.

"As our contract on this job called for a $25.00 payment with order, $50.00 to be paid October 1st, and note for balance of $495.00 payable on November 1st, we will greatly appreciate your check for the $50.00 and a new note for $495.00 less any curtail you wish due say December 15th or January 1, 1928. The note we now hold was not entered for collection by us due to an oversight.

"Yours very truly,
"GILPIN-SMITH ELECTRIC CORPORATION,
"SIDNEY S. SMITH,
"President and Treasurer.

"Richmond, Virginia, February 2, 1928.
"MR. C. L. GOODLOE,
"c/o Henry Clay Hotel, Ashland, Virginia.
"Dear Sir:

"Referring to our letter of January 23rd with reference to Lipman refrigerating machine and condition of box which you were to take up with the Straus Company, we wish to state that we feel that we have waited long enough on this matter and would like to have settlement of this account in accordance to contract on same at once.

"We feel that we have done everything possible to make this job satisfactory, and find that there is absolutely nothing wrong with our part of the contract, and we therefore request you to give this matter your prompt attention, and we may have settlement within the next few days.

"Yours very truly,
"GILPIN-SMITH ELECTRIC CORPORATION, ·
"C. D. PARRISH, Manager.

"Further the defendant testified that Richard H. Smith was the father of Sidney S. Smith, the president of Gilpin-Smith Corporation.

"In rebuttal the plaintiff proved that Richard H. Smith was the chairman of the board of directors of the State Planters Bank of Richmond, and evidence of his good reputation for truth and veracity was introduced.

"The defendant also introduced evidence that the Gilpin-Smith Corporation had gone out of business before the suit was brought and that the corporation was worth nothing."

The note in the instant case being regular on its face, the presumption is that the plaintiff acquired it before maturity, for value and without notice of any infirmity therein, but the defendant contends that this presumption is rebutted because the evidence shows: (1) That the plaintiff acquired the note after it was overdue, and (2) that the

plaintiff took the note with knowledge that the consideration therefor had wholly failed, and with the understanding between himself and payee that he was to hold it subject to all the defendant's equities against it.

In 3 R. C. L., page 1065, the rule in reference to the last named proposition is thus stated: "If one who takes a bill of exchange or promissory note knows at the time that defenses and equities exist against it in the hands of his transferor, he is not entitled to the protection afforded a *bona fide* holder by the rule of the commercial law. This notice of a defense to the instrument or of its infirmity affects the good faith of the purchaser and deprives him of the vantage ground and security of an innocent purchaser. However much he may have taken the instrument for value and before maturity, knowledge nevertheless deprives him of the character of a holder in due course. Nor is it necessary, under the authorities, to fasten on the plaintiff notice of the particular defect in title, fraud, etc., in order that he should be affected by it. * * * The question whether a party taking negotiable paper had such knowledge or not is, ordinarily, a question of fact for the jury, and, like other disputed questions of *scienter*, must be submitted to their determination under the instructions of the court; and the proper inquiry is, did the party seeking to enforce the payment have knowledge, at the time of the transfer, of the facts and circumstances which impeach the title as between the antecedent parties to the instrument? Whether the purchaser had such knowledge may be proved by showing that the matters of defense were directly communicated to him, or by proof of circumstances from which notice must be presumed." See, also, cases cited in 2 R. C. L. Per Sup., page 969.

It being agreed that the consideration for the note in the instant case entirely failed on account of the worthless condition of the refrigerating machine for which it was

given, in the view we take of the case, the real inquiry is whether the jury was justified in finding that the plaintiff took the note with notice of that infirmity, or with the understanding that he should hold it subject to the equities against it, as the defendant claims. It appears from the defendant's testimony that from the time the machine was purchased until it was discontinued she was in frequent communication with the Gilpin-Smith Corporation, and refused to pay the $50.00 due October 1st, on account of the condition of the machine. It further appears that, although plaintiff states the note was transferred to him on October 14, 1927, the defendant had no knowledge that the plaintiff had any interest in the matter until she received his letter of September 12, 1928, over ten months after the note fell due, in which he uses the following language:

"The Gilpin-Smith Electric Corporation *assigned* to me your note for $495.00 in October, 1927, *but at their request I did not call for payment, they explaining that the refrigerating system had not been working satisfactorily. They now advise me that they consider their part of the work to be satisfactory.*

"*I therefore have to request that you arrange to pay me the amount of the note which I hold.*" (Italics supplied.)

In the meanwhile the Gilpin-Smith Corporation, long after the alleged transfer and maturity of the note, was writing the defendant as if it still owned the note, calling on her for payment, and asking for a new note, with the assertion that "the note we now hold was not entered for collection due to an oversight." No explanation is given of these letters by the plaintiff, or by the Gilpin-Smith Corporation.

Considering the language used in plaintiff's letter, in connection with the other facts and circumstances above stated and the close relationship between the plaintiff and the representative of the Gilpin-Smith Corporation who

indorsed the note, it seems manifest that the jury might have reasonably inferred that both the payee and the plaintiff knew of the condition of the refrigerating machine when the note was transferred, and it was taken by the plaintiff with the knowledge and understanding on his part of defendant's equities.

It is true that the plaintiff testified that "he did not mean in the letter to say that he had notice of trouble with the machine before he bought the note, but that he received his notice after its purchase but before the note fell due;" but the question raised by that statement was, of course, entirely for the jury to determine.

■ It is well settled that even though the evidence of a witness has not been impeached—according to the common acceptation of the term—it is not conclusively binding on the jury. "The jury are the judges of the credibility of the witness, and they have the right to determine from his appearance on the stand, his manner of testifying, his candor and fairness, his contradictions, if any, what weight shall be given to his evidence." *Metropolitan Life Ins. Co.* v. *Botto*, 153 Va. 479, 143 S. E. 625, 628, 154 S. E. 603; *Horton's Case*, 99 Va. 855, 38 S. E. 184; *Clopton's Case*, 109 Va. 818, 63 S. E. 1022; *Standard Oil Co. of New Jersey* v. *Davis*, 157 Va. 709, 162 S. E. 29.

■■ With full recognition on our part of the high standing and reputation of the plaintiff in the case at bar, we nevertheless find ourselves unable to say that the jury was bound to accept his statement in regard to the transaction in question, without usurping a function which comes exclusively within their province under the well established and long recognized rules of this court. A court cannot set aside a verdict found by the jury merely because, if on the jury, it would have found a different verdict. *Thompson* v. *Norfolk & P. Traction Co.*, 109 Va. 733, 64 S. E. 953.

■ We need only further say in reference to this subject that, in view of all the facts and circumstances, we think the whole question of whether the plaintiff was a *bona fide* holder of the note, for value and without notice, was a question for the jury and not for the court, and the same having been submitted to the jury under proper instructions given by the court at the request of the plaintiff, the verdict of the jury is conclusive of the question.

In *Forbes & Co.* v. *Southern Cotton Oil Co.*, 130 Va. 245, 108 S. E. 15, 19, Judge Burks said: "In *Palmer* v. *Showalter*, 126 Va. 306, 101 S. E. 136, it was held that the court 'will sustain a verdict, although it was set aside by the trial judge, unless it can be perceived that there has been a plain deviation from right and justice, and that the jury have found a verdict against the law, or against the evidence.' These cases are but typical. Many more can be added. They manifest the great respect that is accorded the verdict of a jury fairly rendered. It is not sufficient that the judge, if on the jury, would have rendered a different verdict. It is not sufficient if there is a great preponderance of the evidence against it. If there is conflict of testimony on a material point, or if reasonably fair-minded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court, or if improperly set aside by the trial court, it will be reinstated by this court."

■ The record presents only one other question to be considered. It is earnestly insisted by plaintiff's counsel that the trial court erred in admitting in evidence, over plaintiff's objection, the defendant's statement as to the communications between herself and the payee after the alleged transfer of the note, and the two letters dated

November 29, 1927, and February 2, 1928, respectively, from the Gilpin-Smith Electric Corporation. It appears from the record and briefs of counsel that the aforesaid evidence was objected to chiefly on the ground that the same was hearsay, unless and until it was shown that said corporation was acting as plaintiff's agent in its dealings with the defendant, and in writing the letters. After careful consideration we do not think the objection is sound.

In the case of *Karnes* v. *Commonwealth*, 125 Va. 758, 99 S. E. 562, 564, 4 A. L. R. 1509, the late Chief Justice Prentis made the following observations, which we think are applicable to the question here involved: "Much must be left to the discretion of the trial judge, but where the proper determination of a fact depends upon circumstantial evidence, the safe practical rule to follow is that in no case is evidence to be excluded of facts and circumstance connected with the principal transaction, from which an inference can be reasonably drawn as to the truth of a disputed fact. (8 R. C. L., page 180.) The modern doctrine in this connection is extremely liberal in the admission of any cricumstance which may throw light upon the matter being investigated, and while a single circumstance, standing alone, may appear to be entirely immaterial and irrelevant, it frequently happens that the combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion. * * * Instead of withholding any available information by the application of rigid rules of exclusion, the 'more excellent way' is to admit all testimony which will enlighten the triers of fact in their quest for the truth. The better view is, not how little but how much logically competent evidence is admissible. See, also, *Hines* v. *Commonwealth*, 136 Va. 728, 117 S. E. 843, 35 A. L. R. 431; *Mutual Life Ins. Co.* v. *Hillmon*, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706.

"It is an established rule governing the production of evidence, that the evidence offered must correspond with the allegations and be confined to the point in issue. It is not necessary, however, that the evidence should bear directly upon the issue. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof; although alone, it might not justify a verdict in accordance with it. * * * It is well settled that if the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury. * * * Evidence upon a collateral issue may be relevant if the fact which it tends to establish will tend to prove or disprove the fact in issue." 10 R. C. L., page 927.

In the case here, as hereinbefore stated, the defendant claimed that the plaintiff took the note with the knowledge, derived from the payee, that the note had been given for a machine which had proved to be worthless, and with the understanding that he was to hold it subject to her equities against the payee. The statements contained in plaintiff's letter and the inferences which may be drawn therefrom tend to sustain this contention. We, therefore, think it clear that the evidence objected to was admissible to show the payee's verbal acts and conduct in regard to the fact in controversy as circumstances tending to prove that these inferences were true. The defendant had no means or opportunity to prove her contention by direct testimony, and was entitled to establish the allegations of her plea by any related circumstances tending to show its truth. 3 Wigmore on Evidence, section 1772, *et seq.*

In 8 C. J. page 1023, section 1338, it is said:

"If the question is whether plaintiff took with knowledge of defenses, any relevant evidence tending to show actual notice of defenses prior to the transfer is admissible. Thus evidence of conversations between plaintiff and the payee

in regard thereto, or that plaintiff had brought similar
paper of the same party to which the like defense had been
made, or that plaintiff and his transferor were located in
the same city, or newspaper articles published in a local
paper to which plaintiff was a subscriber, are admissible,
as well as any circumstantial evidence, to show actual
knowledge."

Upon consideration of the whole case, we are of the
opinion that the judgment of the trial court should be
reversed, and judgment entered here for the defendant be-
low in accordance with the verdict of the jury.

*Reversed.*

HOLT and EPES, JJ., dissenting.