## Staunton.

## WATSON V. MITCHELL.

### September 16, 1920.

1. SPECIFIC PERFORMANCE—*Evidence—Vendor's Conversation with Third Parties—Case at Bar.*—A vendee brought suit for specific performance. The vendor contended that under the contract of sale of an entire farm, part thereof, known as the cannery lot, was reserved. There was a sharp conflict in the testimony. The sale was at auction. During a lull in the bidding, the vendor had a conversation with the vendee, and according to the vendee, agreed that if the vendee would make the property bring as much as $7,000, the cannery lot would be included. This the vendor denied. During this lull the vendor also had a conversation with two competing bidders who testified that they were told by the vendor that if they would pay $7,000 for the property, the cannery lot would be included. The vendor denied this conversation and objected to the admission of the testimony of these two competing bidders.

   *Held:* That the testimony was admissible. The vital question was, "What was the intention and motive of the vendor and vendee when the bidding was resumed?" and the testimony was admissible to show such intention.

2. EVIDENCE—*Res Gestae—Conversation of Vendor with Bidders at Auction Sale.*—In the absence of deceit or fraud upon innocent persons, conversations between the vendor and bidders at an auction sale of real property as to what property would be included if a certain price was obtained, constitute a part of the *res gestae,* and any promises which the owner of the property held out to prospective purchasers as inducements to bid, even though they controvert statements made by his agent, the auctioneer, would control.

3. SPECIFIC PERFORMANCE—*Decree—Interest of a Lessee—Amendment by Supreme Court of Appeals.*—In a suit for specific performance, a decree declared the effect of a deed which it directed the vendor to make to the vendee to be to divest the vendor of the legal title and all interest in the land and to invest the same in the vendee. It was conceded that there was a lease upon part of the property, which at the time of the sale had six years to run.

*Held:* That while no recital in the decree could affect the rights of the lessee, who was not a party to the litigation, the Supreme Court of Appeals would amend the decree of the trial court, so as to provide that all the rights of the lessee should be excepted and reserved.

Appeal from a decree of the Circuit Court of Bedford county. Decree for complainant. Defendant appeals.

*Amended and affirmed.*

The opinion states the case.

*S. S. Lambeth, Jr.,* for the appellant.

*Willis, Adams & Hunter,* for the appellee.

PRENTIS, J., delivered the opinion of the court.

Mitchell, the vendee, instituted his suit against Watson, the vendor, for the specific performance of a contract of sale of a tract of land in Bedford county, known as the W. P. Thurman farm. The vendor contends that under the contract of sale of the entire farm, consisting of 297.77 acres, part thereof, 2.77 acres, known as the cannery lot, was reserved. There is a sharp conflict in the testimony, but the controlling facts as disclosed by the record and found by the trial court are these: That the property was advertised for sale at public auction without any reservation, but at the sale the auctioneer announced that the cannery lot would not be included, and this fact is admitted by both parties. After the bidding had reached $6,650 and stopped, the parties had a private conversation, in which, according to the vendor, he agreed that if the vendee would then bid $7,000 for the property, the cannery lot would be included, and that the vendee refused to accept the proposition; while

40

according to the vendee it was agreed that if he would make the property bring as much as $7,000 the cannery lot would be included. Then there is the testimony of two other witnesses, George Morgan, who was also a bidder at the sale, for himself and his brothers, and Rufus Morgan, his brother that when the bidding stopped they also had a private conversation with the vendor. According to these two witnesses, their purpose was to ascertain whether they could get "plenty of time" for the payment of the purchase money, but in the conversation they were told by the vendor that if they would pay $7,000 for the property, the cannery lot would be included; and that they, with this understanding, continued to bid. The vendor denies that he made any statement whatever with reference to the cannery lot in this conversation. The bidding was then resumed, the only bidders being Rufus Morgan and the vendee, Mitchell, and was increased by successive bids of $25 until it was knocked out to the vendee at $7,025. There was no written memorandum of sale made by the auctioneer, but the following agreement was signed by the parties:

"Articles of agreement made this 20th day of November, 1917, between S. R. Watson, seller, and W. O. Mitchell, purchaser, of a tract of land known as the Dr. Thurman farm The purchaser pays and the seller received $100.00 of the purchase price as evidence of the sale made. The balance, $6,925.00, to be paid cash when title is found to be satisfactory to purchaser. Given under our signatures this the 20th day of November, 1917. S. R. Watson, seller; W. O. Mitchell, purchaser."

Before this contract was signed the vendee insisted that the cannery lot was included and that this should affirmatively appear, while the vendor insisted that it was not included in the sale. Neither of the parties yielded his contention, except so far as this may be inferred from their execution of the said written agreement.

[1] Several sound propositions of law are urged by the vendor's counsel in support of his assignments of error. As to most of them it is sufficient to say that the facts of this case do not justify their application. It is proper, however, to refer to the claim that it was error to admit the testimony of George Morgan and Rufus Morgan, who were the competing bidders at the sale, as to their understanding with the vendor that if the property should bring $7,000 the cannery lot would be included.

In support of this assignment, the following quotation from the case of *Repass* v. *Richmond,* 99 Va. 514, 39 S. E. 162, is relied on : "Except in certain cases where the knowledge, motive, or intention of the party is a material fact in the case, as it was not in this case, the general rule is that no reasonable presumption can be formed as to the making or execution of a contract by a party with one person in consequence of the mode in which he has made or executed similar contracts with other persons. Neither can parties be affected by the conduct or dealings of strangers. Transactions which fall within either of these classes are *res inter alios acta,* and evidence of this description is uniformly rejected." Citing 1 Phillips on Ev., sec. 748; 1 Greenleaf on Ev., secs. 52-53.

We cannot agree that this supports the contention. The quotation itself excepts cases where the knowledge, motive or intention of the party is a material fact in the case, and in this controversy the knowledge, motive and intention of both of the parties were material. The vital question is, what was the intention and motive of the vendor and vendee when the bidding was resumed? Was it the intention of the vendor to induce Mitchell, the vendee, to bid $7,000· for the property by including the cannery lot, and did he offer the same inducement to the competitive bidder, Morgan? It seems to us clear that these are proper inquiries in this case, and if so the testimony of Morgan was admissible.

[2] Then again, in the absence of deceit or fraud upon innocent persons, these conversations with the bidders by the vendor constitute a part of the *res gestae*—the circumstances attending the bidding—and any promises which the owner of the property held out to prospective purchasers as inducements to bid, even though they controvert statements made by his agent, the auctioneer, would control. In this case it appears from the testimony that there were only two bidders, Morgan and the vendee, after the auction sale was resumed; so that if the testimony of the two Morgans and the vendee is true, the same inducement was offered to both. The evidence was not introduced to set up a parol contract with a third person not a party to the litigation, but merely to show the circumstances co-incident with and attending the sale. We think it unnecessary to enter into further detail as to the testimony. The weight of the evidence sustains the contention of the vendee and the trial court rightly so determined.

[3] After directing Watson, the vendor, to convey the entire property, including the cannery lot, to Mitchell, the decree uses this language: "The effect of said deed to be to divest said Watson of the legal title and all interest in said land and to invest the same in the said Mitchell," and this is complained of because it is conceded by all that there is a lease upon the cannery lot which at the time of the sale had six years to run, and all of the parties understood that the lessee would be protected in his rights under such lease. While no recital in this decree could affect the rights of the lessee, who is not a party to this litigation, this court will amend the decree of the trial court so as to provide that all of the rights of the lessee of the cannery lot are excepted and reserved.

*Amended and affirmed.*