# Wytheville

PHILIP GREENBERG, INCORPORATED, ET AL. V.
ROBERT M. DUNVILLE.

June 11, 1936.

Present, Holt, Hudgins, Gregory, Chinn and Eggleston, JJ.

The opinion states the case.

*Carter & Williams,* for the plaintiffs in error.

*Crews & Clement* and *J. Roland Rooke,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

Robert Dunville, the plaintiff below, brought this action of detinue to recover possession of certain store fixtures which he claimed were being unlawfully withheld from him by Philip Greenberg, Incorporated, and Philip Greenberg, the defendants below. The judgment entered in favor of the plaintiff on the verdict of the jury is here for review.

The evidence shows that Philip Greenberg operates a fresh meat market under the name of Philip Greenberg, Incorporated, in the city of Danville. In January, 1935, Greenberg entered into a written contract with the Allied Stores Utilities Company, a Missouri corporation, whereby he agreed to purchase of the latter certain store fixtures at the price of $2,365. On the purchase price Greenberg received a credit of $865 for certain old equipment which he was to ship to the Allied Company at Richmond, Va., upon receipt of the new fixtures. Under the contract the title to the new fixtures was reserved in the Allied Stores Utilities Company until payment in full therefor. There was no reservation in Greenberg of the title to the old fixtures. This sale was negotiated on behalf of the Allied Company by Robert M. Dunville, one of its salesmen, the plaintiff here.

Upon arrival of the new fixtures Greenberg claimed that they were defective. Consequently he refused to ship the old fixtures to the Allied Company at Richmond until some adjustment was made of his complaint. After some negotiations between Dunville and Greenberg the present suit was brought by Dunville to recover possession of the old equipment.

The defendants filed a joint plea of *non detinet* under which they claimed that title to the traded-in equipment was in Allied Stores Utilities Company and not in Dun-

ville. The principal assignment of error is that the evidence is insufficient to sustain the verdict and judgment in favor of Dunville on this issue.

On this point the evidence is brief and uncontradicted. Dunville testified that in transactions of this character it was the "custom" of his principal, the Allied Stores Utilities Company, to require its salesmen to accept as part payment for their services the traded-in equipment at the price allowed to the customer therefor. In this he is corroborated by Carter, another salesman for the same company. Dunville further testified that, pursuant to this arrangement, at the time the new equipment was shipped to Greenberg, his (Dunville's) commission and reserve account with his principal was charged with the full trade-in value of the old equipment, and that the latter thereupon became his property. He introduced in evidence a letter from his principal to himself in which it was stated that the equipment in controversy was his property and not that of the Allied Company.

It is true that there were circumstances which gave color to Greenberg's claim that this alleged transfer of the title to the old equipment from the Allied Company to Dunville was an after-thought, conceived for the purpose of depriving Greenberg of any rights which he might have against the property to secure his claim for damages arising out of the defect in the new equipment. For instance, there was testimony that during the negotiations between Dunville and Greenberg for the adjustment of the latter's complaint, Dunville never claimed that the old fixtures were his property. But this was but a circumstance to be considered by the jury in determining the credibility of Dunville's testimony that the fixtures were his property.

Again, in the letter from the Allied Company to Dunville, referred to above, it is said "The equipment traded in on this job and which is your property, and which is being retained by Mr. Greenberg unlawfully *would prob-*

*ably be secured more quickly if you handled the situation yourself from Richmond."*

It is argued that the italicized language shows that Dunville's claim of title to the equipment was but a part of a "scheme" to place it beyond the reach of Greenberg's claim; that the parties thought that by having Dunville claim the property it could be "secured more quickly" than by having the Allied Company risk litigation with Greenberg over it.

But this conclusion does not necessarily follow when the whole letter is read in the light of the circumstances. It refers at length to Greenberg's claim as to defects in the new equipment. It points out that the trouble was due to improper assembly of the fixtures and not to any defects therein. If Greenberg could be satisfied as to this he would release the old equipment to Dunville. Obviously this was a "situation" which could be more easily handled by Dunville from Richmond than by the Allied Company from its home office in Missouri, especially, as the letter points out, since Dunville had had all of the prior negotiations with Greenberg.

There is nothing incredible in the testimony of Dunville and his witnesses which has been accepted by the jury. The substance of it is that, pursuant to a verbal contract between the Allied Company and Dunville, the former sold to the latter for a valuable consideration certain personal property which was in the possession of Greenberg.

That, in the absence of a statute, a vendor, by verbal contract, may sell to another personal property in the possession of a third person, is a proposition so elementary as hardly to require the citation of authority. See *Chapman* v. *Campbell*, 13 Gratt. (54 Va.) 105, 109, 111; *Ellis & Meyers Lumber Co.* v. *Hubbard*, 123 Va. 481, 494, 96 S. E. 754; 23 R. C. L., p. 1237, sec. 53; 55 C. J., p. 66, sec. 29.

Here the contract between Greenberg and the Allied Company provided that title to the old equipment should pass to the latter upon delivery to Greenberg of

the new equipment. Upon such delivery the old equipment became the property of the Allied Company to be dealt with as it saw fit. Dunville testified that he purchased it from the Allied Company, and this the latter said is true. The jury's verdict, in accepting this testimony, is binding on us unless there be some error in the admission of the evidence.

This brings us to the final claim of Greenberg that the trial court erred in allowing Dunville to testify that it was the "custom" of the Allied Company to require its salesmen to accept, as part payment for their services, the traded-in equipment at the price allowed to the customer therefor.

The ground of the objection is that the evidence of the "custom" tended to vary the contract between Greenberg and the Allied Company. Clearly this was not a valid reason for rejecting the testimony. The evidence of the "custom" related not to that contract but to the subsequent verbal agreement between the Allied Company and Dunville by which it is claimed the title to the old equipment was transferred from the former to the latter. The purpose and effect of the evidence was to repel Greenberg's attack on the *bona fides* of the latter contract. It showed that the agreement was but the usual and customary one between the Allied Company and its salesmen.

Whether the evidence of the making of similar contracts with other parties has any probative value in establishing the making of the contract in question, is a subject on which there is much conflict of authority. The admissibility of such evidence is approved by Wigmore on Evidence (2d Ed)., vol. 1, sec. 377. See also, *Repass* v. *Richmond,* 99 Va. 508, 514, 39 S. E. 160, and *Watson* v. *Mitchell,* 128 Va. 312, 315, 104 S. E. 825, which touch on the subject.

But whether the testimony of Dunville, as to this "custom" of his company, was admissible in the first instance is a question we need not decide for the reason

that another witness, Carter, without objection, testified to precisely the same fact.

In *Taylor* v. *Mallory,* 96 Va. 18, 30 S. E. 472, it is held that, although an exception to the testimony of a witness may be well taken, if the same fact is subsequently proved by other witnesses without objection, the error will be deemed to be harmless. See also, *Virginia & S. W. Ry. Co.* v. *Bailey,* 102 Va. 205, 222, 49 S. E. 33.

Also in *Portner* v. *Portner's Ex'rs,* 133 Va. 251, 263, 112 S. E. 762, and in *Chesapeake & O. Ry Co.* v. *Greaver,* 110 Va. 350, 354, 66 S. E. 59, we held that a well-taken exception to the admissibility of certain evidence was waived by the failure to object to the same evidence subsequently introduced.

On the whole, we find no error in the proceedings below, and the judgment is affirmed.

*Affirmed.*