COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Fitzpatrick, Judges Bray and Annunziata
Argued at Alexandria, Virginia


EDWARD ALEXANDER BECKFORD, JR.

MEMORANDUM OPINION[*] BY
v.    Record No. 1976-99-2        JUDGE ROSEMARIE ANNUNZIATA
                                    MAY 30, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF LANCASTER COUNTY
Joseph E. Spruill, Jr., Judge

(Robert L. Cunningham, on brief), for appellant.
Appellant submitting on brief.

Robert H. Anderson, III, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellee.


On April 29, 1999, Edward Beckford and Andre Noel were

tried jointly on various charges stemming from a drug

distribution conspiracy in Lancaster County.  Beckford was

convicted in the bench trial of conspiracy to distribute

cocaine, distribution of cocaine, possession of cocaine with

intent to distribute, and transportation of cocaine.  Beckford

contends that the trial court erred 1) in admitting a written

out-of-court statement of Faith Parker, a co-conspirator; 2) in

admitting oral out-of-court statements made by Parker; and 3) in

admitting the weight of imitation replicas of cocaine "cookies"

        * Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

as demonstrative evidence.  We find that Beckford has failed to preserve his claims for appeal, and affirm the convictions.

FACTS

In the summer of 1998, the Lancaster County Sheriff's Department began an investigation of a drug trafficking conspiracy involving a group of individuals calling themselves the "Jersey Boys."  These individuals were suspected of trafficking in "crack" cocaine and distributing it in Lancaster County.  Ashby Allen, Jr., Chief Investigator for the Sheriff's Department, and Investigator Joan Webb headed the investigation.  Webb hired a paid informant, Mary Beale, to conduct controlled purchases of cocaine from the Jersey Boys.  On September 9, 1998, Allen and Webb went to Beale's apartment in Kilmarnock, where Beale placed a telephone call to Arthur Fisher, one of the Jersey Boys.  Allen and Webb hid in Beale's bedroom when Fisher arrived.  Beale and Fisher discussed a purchase of drugs, and Fisher made several telephone calls.  On the telephone Fisher spoke to "Marquis" and "Dre"; one of Beckford's aliases was Marquis Givins.  After making the telephone calls, Fisher left the apartment, but soon returned, accompanied by Beckford's codefendant, Noel, nicknamed "Dre."  Allen and Webb overheard Beale, Fisher, and Noel negotiating the drug sale.  After Fisher and Noel left the apartment, the officers recovered a substance from Beale later determined to be cocaine.

Fisher testified for the Commonwealth. He admitted that he sold cocaine to Beale on the evening of the controlled purchase and that he had purchased the cocaine in question from Noel. Fisher further testified that he had first encountered the Jersey Boys in the summer of 1998 and that members of the group included Noel, Beckford, Keith Mayweather, and Daniel Ford. Fisher stated that all of the Jersey Boys lived together in a house on Kilmarnock Road.

Francis Norris also testified. Norris owns a house in Merry Point, located in Lancaster County, which he rented to Faith Parker in the summer of 1998. While cutting the grass at the house, Norris discovered a large rock of cocaine hidden beneath a board near the house. Disturbed by the discovery, Norris destroyed the rock of cocaine and evicted Parker. Parker told Norris that the cocaine did not belong to her, but belonged to Daniel Ford. Parker told Norris that she was afraid of Ford and his associates, and she gave Norris a telephone number where he could contact them. Norris phoned Ford, and asked whether the cocaine was his. Ford initially denied the cocaine belonged to him, but when Norris told him he had destroyed it, Ford said the drugs were "part of his job" and demanded payment for its value.

Investigator Allen testified that on October 14, 1998, Parker offered a written statement at the Lancaster County

- 3 -

Sheriff's office.  Parker was not under arrest at that time. She stated that she had known the Jersey Boys, whom she identified as Noel, Ford, Beckford (whom she identified by his alias "Marquis Givins"), and Mayweather (whom she identified as "Keith Grant") since February, 1998.  She knew they sold drugs. She stated that she accompanied them on an unspecified date to Ford's home in Newark, New Jersey, to pick up cocaine.  The four men dropped her off in Newark and proceeded to New York.  When they returned to Newark, Parker saw them package the cocaine, storing it in the gear shift mechanism of the car for the return trip to Virginia.  Parker further stated that she accompanied Ford and an individual named George on a second trip to New Jersey in August, 1998 and that they obtained cocaine there. She stated that in September, 1998, members of the ring stored cocaine at her house, which Norris subsequently found and destroyed.  She stated that Ford called her and demanded the monetary value of the destroyed cocaine and that Beckford and Mayweather "wanted to hurt me or Mr. Norris."  The statement was admitted into evidence over the objection of counsel for both defendants.

Allen further testified, over objection by Noel's counsel, that in addition to her written statement, Parker described the cocaine purchased by the Jersey Boys for distribution in Lancaster County as "cookies."  By this term, Parker meant

- 4 -

"large pieces of crack cocaine."  Because Allen was previously unfamiliar with this term for rock cocaine, he questioned Parker in detail about the "cookies."  She described them as "about the size of a personal pan pizza," and said that in one trip, the ring brought back "four or five" such "cookies," which were approximately four and one-half inches in diameter and one-fourth of an inch in thickness.  Parker stated that the ring members paid approximately $8,000 for the "cookies" in question. Parker admitted that once the cocaine was packaged, she boarded a bus with it and brought it to Virginia.[1]

Allen testified additionally that, based upon Parker's description of the "cookies," he created a model of a "cookie" from dental stone, a substance used by the police to make castings of footprints and tool marks.  He presented the model to Parker, and she told him it was "the exact size and weight" of the "cookies" she transported from New Jersey to Virginia. Allen then weighed the model, and determined its weight to be 148.5 grams.  The Commonwealth offered the model into evidence. The model was admitted over objection by Noel, who based his objection on the ground that the model was "a result of

---

[1] Investigator Webb's testimony substantially matched that of Investigator Allen concerning the statements made by Parker. Counsel for Noel objected to Webb's recital of Parker's statements, stating he "would have the same objection as before."  Counsel for Beckford raised no objection, however, and did not join in Noel's objection.

hearsay."  Beckford "join[ed] in the objection."  The court admitted the model.

## ANALYSIS

Beckford has failed to preserve his claims for appeal. While Noel objected to Investigator Allen's recounting of the oral statements made by Parker, Beckford did not.  Although Beckford objected to the admission of Parker's written statement during the direct examination of Investigator Allen, when Investigator Webb later testified and recounted the content of Parker's statement, Noel renewed his earlier objection, but Beckford failed to do so.  Also, when Beckford joined in Noel's objection to the admissibility of the model "cookie," he did so on the ground that it was the result of hearsay; his claim on appeal concerns whether a sufficient foundation was laid. Because Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or . . . to attain the ends of justice," Beckford's failure to object to Parker's oral out-of-court statements bars his claim on this issue.  See People v. Foster, 473 N.Y.S.2d 978, 984 (N.Y. 1984) (in a joint trial, codefendants "cannot avail themselves of their [codefendant's] objection"); Wolfe v. East Texas Seed Co., 583 S.W.2d 481, 482 (Tx. App. 1979) (appellant who failed to

make objection at trial cannot avail himself of codefendant's objection to preserve issue for appeal); Poston v. Ragan, 187 S.E.2d 503, 505 (N.C. App. 1972) (a party is not entitled to the benefit of an exception not taken by himself, and therefore exception taken by one party is not available to a co-party).

Moreover, when a party objects to the admissibility of material offered as evidence, and the same material is subsequently offered as evidence, failure to restate the objection constitutes a waiver of the previous objection. See Phillip Greenberg, Inc. v. Dunville, 166 Va. 398, 404, 185 S.E. 892, 894 (1936); Portner v. Portner's Ex'rs, 133 Va. 251, 263, 112 S.E. 762, 766 (1922); C & O Ry. Co. v. Greaver, 110 Va. 350, 354, 66 S.E. 59, 60 (1909). Thus, Beckford's failure during the testimony of Investigator Webb to renew his earlier objection to the admission of Parker's written statement effected a waiver of the prior objection.

Finally, although Beckford properly joined in Noel's objection to the model "cookie" on the ground that its admission was the result of improperly admitted hearsay evidence, Beckford bases his argument on appeal on the Commonwealth's failure to properly establish that the model constituted "illustrative evidence" of the nature of the cocaine "cookies" transported by Parker. Because Beckford did not object to the evidence on this ground, and we find no basis to apply either the good cause or

- 7 -

ends of justice exceptions to the Rule, we will not consider the argument on appeal.  See Singleton v. Commonwealth, 19 Va. App. 728, 735, 453 S.E.2d 921, 926 (1995) (en banc); Reed v. Commonwealth, 6 Va. App. 65, 70, 366 S.E.2d 274, 277 (1988). Beckford has thus failed to preserve his claims for appeal, and we consider them no further.

Affirmed.