UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:   Judges Russell, Malveaux, and Senior Judge Clements
Argued by teleconference

CHARLES ALLEN MOFFETT

MEMORANDUM OPINION* BY
v.        Record No. 0966-19-4        JUDGE MARY BENNETT MALVEAUX
JULY 7, 2020

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF STAFFORD COUNTY
Charles S. Sharp, Judge

Gowri Janakiramanan, Assistant Public Defender, for appellant.

Leanna C. Minix, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.

Charles Allen Moffett ("appellant") was convicted of grand larceny, in violation of Code

§ 18.2-95, and statutory burglary, in violation of Code § 18.2-91.  On appeal, he argues that the trial

court erred in admitting evidence of prior bad acts.  For the following reasons, we affirm.

I.  BACKGROUND

The Offense

In April 2018, Paula Johnson was living on Mountain View Road in Stafford County

with her mother, Jewel Kelly.  Their home and garage were not visible from the road and could

only be seen by walking up the driveway.

Johnson owned a Harley-Davidson Road King motorcycle, which she stored in the

garage.  Her brother, Kevin Johnson, stored an antique Toyota Land Cruiser and some other

antiques and tools in the garage as well.  The only individuals with keys to the garage were

Johnson, her brother, and a neighbor, Victor Germaine.  The garage had two doors, which were

secured by a door lock, but Johnson testified that the garage could be opened without a key if "you . . . jimmy the lock a little bit" by "pop[ping] it with a credit card or something."

Johnson and Kelly had known appellant for more than thirty years and considered him a family friend. On Sunday, April 22, 2018, Johnson arrived home and found appellant sitting on the front porch. He asked to stay at the home because he had a "pool job" to do in Fredericksburg. He originally asked to stay for one night but ended up staying for four nights, because the person who was supposed to pick him up did not arrive.

On Thursday, April 26, 2018, Johnson accompanied Kelly to her chemotherapy appointment. They arrived at the hospital in the morning and stayed for thirteen hours, leaving around 7:30 p.m. Kelly attempted to call appellant twice that day to ask him to check on her dogs, but she was unable to get in touch with him. Both Johnson and Kelly described this as "unusual" because appellant would typically answer Kelly's phone calls right away.

When Johnson and her mother arrived home, appellant was gone and had not left a note. Johnson noticed that night that her Coach watch was missing from the top of her nightstand. The next day, she looked through her nightstand and discovered that in addition to the watch, she was missing another watch, a bracelet, and a ring.

Sometime on Thursday, April 26, 2018, Germaine looked out his kitchen window and noticed that Johnson's garage door was open. He also saw someone on a Harley-Davidson motorcycle pushing it toward the house. Germaine called Kevin Johnson and asked him if he was getting on the motorcycle. Kevin Johnson replied that it was probably his sister. About a half hour later, Germaine saw the man on Johnson's motorcycle come up the driveway and make a left-hand turn onto Mountain View Road.

Two days later, on April 28, 2018, Johnson left town to attend a work conference. That day, Kevin Johnson went to work on items in the garage. He noticed that his sister's motorcycle

was missing. He called Johnson and told her that her motorcycle was missing from the garage. The next day, Johnson went to the garage and found the motorcycle cover on the floor. She also found a handmade cross necklace that fell out of the motorcycle cover when she picked it up. Both Johnson and Kelly testified that they had previously seen appellant wearing the necklace.

Johnson testified that her motorcycle had an alarm on it so that it could not be "hot wired" and had "to have something to start it or shut off an alarm." A key fob on the key to the motorcycle would shut off the alarm. Johnson had two keys to her motorcycle which she kept in her nightstand along with her jewelry. When she checked her nightstand, she found that one of the two keys was missing. No other valuables were taken from the home or the garage.

After discovering that the motorcycle was missing, both Johnson and Kelly attempted to contact appellant, but he never responded to their attempts. Johnson's motorcycle was never recovered. Johnson had not given appellant permission to take her jewelry, her motorcycle, or her keys.

Evidence of Prior Bad Acts

At trial, the Commonwealth's attorney asked Johnson whether appellant had told her "about his past with taking motorcycles." Counsel for appellant objected, arguing that the testimony Johnson was going to provide—that appellant "ha[d] previously stolen and disposed of motorcycles in Philadelphia"—was inadmissible prior bad acts testimony. The Commonwealth's attorney proffered that Johnson's testimony would be that appellant "told her in the past he was affiliated with a motorcycle club, he would take motorcycles up to Philadelphia, he would sell the motorcycles to them where they would . . . part-out the parts, where they would basically chop it up." The Commonwealth's attorney argued that the testimony was admissible as "it goes to lack of mistake, motive, scheme or plan." In response,

- 3 -

counsel for appellant argued that the evidence was not admissible as a common scheme or plan and that it was more prejudicial than probative.

The trial court ruled that

> [appellant's] statements related to prior bad acts, those prior bad acts happen to be ostensi[b]ly remarkably in similar nature to what's being charged in this particular indictment, the [c]ourt finds that the evidence is sufficient to make it admissible, and I do not find that the prejudice outweighs the probative value. So the objection is overruled.

Johnson then testified that appellant told her "that he worked for a motorcycle gang in Philadelphia and he used to steal motorcycles and take them and part them out." She "assum[ed]" that "part them out" meant taking parts off of motorcycles and selling the parts to other people as opposed to selling the whole motorcycle because the motorcycle had an identification number on it. Johnson specifically stated that appellant told her he worked for a motorcycle gang but was not a part of a motorcycle gang. She testified that appellant had made statements like these several times over the years she had known him and had probably last made similar statements in 2017. When asked when appellant had worked for the motorcycle gang, Johnson stated that she did not "have the exact year" but that it was "when he was on the run from the state of Virginia."

On cross-examination of Kelly, counsel for appellant asked whether appellant had ever told Kelly about being in a in a gang in Philadelphia or working for a motorcycle gang. Kelly responded, "He told me that he knew people there. . . . That had a motorcycle gang, yeah." On re-direct, the Commonwealth's attorney asked Kelly, without objection, about the "motorcycles up in Philadelphia," and she stated that appellant had told her that he had taken motorcycles to Philadelphia where "they chopped them up and resold them."

Appellant was convicted of grand larceny, in violation of Code § 18.2-95, and statutory burglary, in violation of Code § 18.2-91. This appeal followed.

- 4 -

## II. ANALYSIS

On appeal, appellant argues that the trial court erred in admitting evidence of prior bad acts. He contends that Johnson's and Kelly's testimony regarding his past statements that he had taken motorcycles to Philadelphia and resold them for parts was introduced solely to demonstrate his predisposition to steal motorcycles, was not probative of any of the exceptions to the general rule prohibiting the introduction of prior bad acts evidence, and that any probative value of the statements was outweighed by their prejudicial effect.

However, the Commonwealth argues that appellant has waived any challenge to the admission of his statements because he failed to object to Kelly's testimony at trial.

> It is a well settled and obviously sound general rule that an objection to evidence cannot be availed of by a party who has, at some other time during the trial, voluntarily elicited the same evidence, or has permitted it to be brought out by his adversary without objection. The rule finds its most frequent application in cases where the party making the objection afterwards introduces the same evidence. . . .

Burns v. Bd. of Supervisors, 227 Va. 354, 363 (1984) (quoting Whitten v. McClelland, 137 Va. 726, 741 (1923)) (emphasis omitted). An unsuccessful objection "to the admissibility of certain evidence [is] waived by the failure to object to the same evidence subsequently introduced." Philip Greenberg, Inc. v. Dunville, 166 Va. 398, 404 (1936). This is true even if "precisely the same fact" was involved and the trial court had earlier rejected the same objection. Id.; see also Portner v. Portner's Ex'rs, 133 Va. 251, 263 (1922) (holding that, "if it had been error to admit [the challenged evidence] in the first place, subsequent introduction of the same evidence without objection constituted a waiver of the previous objection"); see also Charles E. Friend, The Law of Evidence in Virginia § 8-4, at 295 (6th ed. 2003) ("Waiver is found where . . . [t]he objecting party fails to object to the same evidence when subsequently introduced by the opponent." (emphasis omitted)).

It is clear from the record in this case that appellant objected to the evidence regarding his prior bad acts when that evidence was first elicited at trial during Johnson's testimony. He failed, however, to object when the Commonwealth's attorney subsequently elicited the same evidence during Kelly's testimony. Like Johnson, Kelly testified that appellant had told her that he had taken motorcycles to Philadelphia where "they chopped them up and resold them." In addition, appellant himself elicited testimony from Kelly regarding his prior bad acts. Counsel for appellant asked Kelly on cross-examination whether appellant had ever told her about being in a gang in Philadelphia or working for a motorcycle gang, and Kelly replied, "He told me that he knew people there. . . . That had a motorcycle gang, yeah." In the instant case, by failing to restate his initial objection to the introduction of the prior bad acts evidence and by himself eliciting testimony regarding those prior bad acts, appellant permitted the introduction of the evidence he now challenges on appeal. Therefore, we conclude that appellant waived his objection to the admission of the Commonwealth's evidence regarding his past statements about stealing motorcycles and then reselling them for parts.

## III. CONCLUSION

We hold that appellant waived his challenge to the admission of the evidence of prior bad acts. Accordingly, we affirm.

Affirmed.