BERNARD SINGLETON

v.

COMMONWEALTH OF VIRGINIA

No. 2119-91-2

Decided February 21, 1995

COUNSEL

Paul C. Bland, for appellant.

Robert B. Condon, Assistant Attorney General (James S. Gilmore, III, Attorney General, on brief), for appellee.

OPINION

## UPON A REHEARING EN BANC

COLEMAN, J.—A panel of this Court, in a published opinion, reversed the conviction of Bernard Singleton for robbery. *Singleton v. Commonwealth*, 18 Va. App. 91, 441 S.E.2d 713 (1994). The panel held that the trial court erred by allowing the Commonwealth to present rebuttal evidence on a collateral issue that was irrelevant and prejudicial because the evidence tended to prove another crime. We granted a rehearing *en banc* and stayed the mandate from the panel's decision.

Upon rehearing, we affirm the judgment of the trial court. We hold that (1) the rebuttal testimony, although addressing a collateral matter, was responsive and relevant to an issue raised by the defendant and, therefore, was admissible; (2) the Sixth Amendment confrontation issue is barred by Rule 5A:18 because it is being raised for the first time on appeal; and (3) the evidence is sufficient to support the conviction.

We view the evidence in the light most favorable to the Commonwealth and grant to it "all reasonable inferences fairly deducible therefrom." *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). At approximately 12:30 a.m. on April 18, 1991, two armed men robbed the employees of the Pizza Hut restaurant on South Crater Road in Petersburg, Virginia. The robbers bound two of the employees and forced them to lie on the floor, while forcing the third employee at

gunpoint to open the safe. The robbers stole approximately $1,900 in cash and rolled coins.

On April 22, 1991, the police recovered from Singleton's apartment a large amount of rolled coins and a pair of Singleton's boots. At trial, Wayne Griffin, the assistant manager of the Pizza Hut, positively identified Singleton as one of the robbers. Griffin testified that he had ample time to observe Singleton because he was the person Singleton took to open the safe.[1] Wayne Griffin also positively identified a pair of boots that were seized from Singleton's apartment as those worn by the robber. Griffin further identified Singleton by recognizing his voice at trial as being the same as that of the robber.

Another Pizza Hut employee, John Hawks, testified that, although he was unable "positively" to identify Singleton from the photo array, he was able to identify him in person at trial. On cross-examination, Hawks stated he was "100 percent positive" Singleton was the man who robbed the Pizza Hut.

Singleton testified and presented an alibi defense. After denying that he committed the robbery, Singleton testified as follows during direct examination:

Q. The first question is, did you rob the Pizza Hut on April the 18th?

A. No, Sir. I don't even have any idea where that's at.

On cross-examination, Singleton testified:

Q. Mr. Singleton, tell me where your apartment is here in Petersburg?

A. 630 Decar Drive.

Q. How would you get to it from here?

A. I don't know.

---

[1] When questioned about his pre-trial identification of Singleton from a photo array, Griffin testified that when he was first shown the array, he was "pretty sure" that the photograph of Singleton was the robber. Griffin further testified that when the detective showed him an additional photograph of Singleton showing a side view, he positively identified Singleton as the robber. For Detective Kelleher's account of Griffin's identification and Griffin's verbatim testimony, see addendum.

Q. How long did you have the apartment?

A. 3½ months.

Q. Well, how would you travel to it?

A. By car.

Q. So where is it located?

A. What side of Petersburg?

Q. Uh-huh.

A. I don't know that much about Petersburg to say which side.

* * * * * * *

Q. Have you ever been on Crater Road at the Food Lion?

A. No, Ma'am.

Q. How did you get familiar with that?

A. Through this case.

Q. But you never been there?

A. No, ma'am.

After this evidence, the Commonwealth offered rebuttal testimony of two witnesses who had previously seen the defendant on Crater Road in a Food Lion grocery, where Singleton, on direct examination, stated that he had never been. Singleton objected to the evidence on the ground that it was collateral, not relevant, and prejudicial because he was charged with having robbed the Food Lion and had not yet been tried. Singleton claimed that allowing these witnesses to testify would effectively interject prejudicial evidence of an unrelated crime. The Commonwealth argued that the evidence was relevant and admissible to impeach the defendant's testimony that he was unfamiliar with the area, that he had never been to the Food Lion on Crater Road, and was not familiar with the location of the Pizza Hut. The trial judge ruled as follows:

THE COURT: All right, Mr. Bland, the defendant having stated emphatically that he did not know anything about the streets of Petersburg and had not been on Crater Road and never been to Food Lion, this would serve only as

impeachment.

The statement intended to produce evidence of other occurrences, other crimes I would agree with you, but just for impeachment of a statement that he had never been to Food Lion, I think, is proper evidence.

His witnesses are admonished not to say anything about what happened.

\* \* \* \* \* \* \*

THE COURT: Were it not for the fact Mr. Singleton made a great deal of the effect he knew of Petersburg he couldn't even give the way from the courthouse to where he had an apartment. Didn't know any street names. Didn't know anything else. Never went anywhere in Petersburg. He only stayed in the immediate locality. Everything he is portraying to the jury about his time in Petersburg is very difficult for the Commonwealth's Attorney to repeat.

If they have a way to impeach him without waging unfair prejudice in the Defendant's case and shouldn't be permitted, and I am going to permit it with the understanding of the witnesses that they not mention anything that happened, purely for the purposes of impeachment of testimony that he's never been anywhere in Petersburg, never been to Food Lion, and never went anywhere except right around in Petersburg.

The rebuttal witnesses were permitted to testify that they had seen Singleton on April 3, after midnight in the Food Lion on Crater Road. In accord with the trial judge's limiting instruction, the witnesses were not allowed to testify and did not mention anything about a robbery occurring at the Food Lion.

I.

The evidence that Singleton had been in the Food Lion grocery on Crater Road on another occasion is proof of a collateral fact because it is not a fact the Commonwealth would have been entitled to prove in support of its case. *Simpson v. Commonwealth*, 13 Va. App. 604, 607, 414 S.E.2d 407, 409 (1992). However, "[a]dmission of evidence collateral to the issues is subject to

the discretion of a trial court," *Norfolk & Western Ry. Co. v. Sonney*, 236 Va. 482, 489, 374 S.E.2d 71, 75 (1988), and "[a] trial court exercises a broad discretion in deciding whether collateral evidence is sufficiently relevant to admit in evidence." *Mackall v. Commonwealth*, 236 Va. 240, 255, 372 S.E.2d 759, 769 (1988), *cert. denied*, 492 U.S. 925 (1989). "Evidence upon a collateral issue may be relevant if the fact which it tends to establish will tend to prove or disprove [a] fact in issue." *Goodloe v. Smith*, 158 Va. 571, 584, 164 S.E. 379, 383 (1932). *See also Talbert v. Commonwealth*, 17 Va. App. 239, 242-43, 436 S.E.2d 286, 288 (1993).

The issue is whether the evidence, even though collateral, is relevant. Proof during the Commonwealth's case-in-chief that Singleton had been in the Food Lion grocery on Crater Road on another occasion, or was familiar with Crater Road, would have had little or no tendency, standing alone, to prove that Singleton had robbed the Crater Road Pizza Hut. *See Simpson*, 13 Va. App. at 607, 414 S.E.2d at 409. However, the fact that Singleton had been on Crater Road, or at another Crater Road business on a separate occasion, takes on greater relevance after Singleton disavowed any familiarity with the location of the Pizza Hut in an effort to discredit the victims' identification of him during direct examination of those victims. During cross-examination, Singleton further stated that he was unfamiliar with Crater Road, with the Pizza Hut, and with Petersburg in general.[2]

By testifying that he did not know the location of the Pizza Hut which he allegedly robbed, or the location of Crater Road, Singleton was placing those facts in issue. *See Lewis v. Commonwealth*, 7 Va. App. 596, 602, 376 S.E.2d 295, 298-99 (1989). Singleton was asserting that, because he did not know the location of Crater Road and the Pizza Hut that was robbed, he could not have been the person who committed the robbery. Thus, those facts became relevant and material. Singleton was attempting to persuade the

---

[2] The dissent states that "Singleton never denied knowing the location of Crater Road." Singleton stated that he did not "know that much about Petersburg" and that he had never been on Crater Road at the Food Lion. The trial judge found from Singleton's testimony that he was asserting "emphatically that he did not know anything about the streets of Petersburg *and had not been on Crater Road* and never been to Food Lion." (emphasis added). Singleton's testimony that he "know[s] where Crater Road is," which the dissent emphasizes, was as of the date of trial.

jury by his evidence that because of his unfamiliarity with the area, the victims were mistaken in identifying him as one of the persons who had robbed, abducted, and threatened them with a firearm. Thus, evidence that Singleton was in the Food Lion grocery on Crater Road approximately two weeks before he robbed the employees at the Crater Road Pizza Hut tends to disprove a material aspect of his alibi defense.

## PROBATIVE VALUE VERSUS PREJUDICE

■ All relevant evidence is not admissible. If the prejudicial effect of nominally relevant evidence outweighs its probative value, the evidence is inadmissible. *Woodson v. Commonwealth*, 16 Va. App. 539, 540, 431 S.E.2d 82, 83 (1993). As to the probative value of the Food Lion evidence, "[e]vidence is relevant if it has any logical tendency, however slight, to establish a fact at issue in the case." *Largin v. Commonwealth*, 215 Va. 318, 320, 208 S.E.2d 775, 777 (1974). A trial court does not abuse its discretion by admitting evidence that enhances a victim's account of what occurred, where that account has been contradicted or impeached, provided the probative value of the evidence outweighs the prejudicial effect. *Id.*

Although the record does not show the proximity of the Food Lion on Crater Road to the Pizza Hut, whether Singleton had been in other businesses on Crater Road has some tendency, however slight, to prove that Singleton was familiar with Crater Road and was being untruthful in his disavowal of knowing the location of the Crater Road Pizza Hut. Whether Singleton knew the location of the Pizza Hut on Crater Road became a fact material to his defense. Thus, proving that Singleton was familiar with the Food Lion and with Crater Road has some tendency to disprove Singleton's defense and thereby discredit his effort to prove that he had been misidentified by the victims. *See Sonney*, 236 Va. at 489, 374 S.E.2d at 75 (holding that trial judge abused his discretion by excluding evidence collateral to a material issue where opposing counsel had introduced and "placed emphasis" upon the evidence).

Singleton contends that, even if relevant, admission of the rebuttal evidence was prejudicial error because it was evidence of an unrelated crime. Proof that Singleton was in the Food Lion grocery on Crater Road on April 3, after midnight was not evidence

that Singleton committed another crime. The trial judge ruled inadmissible any evidence that Singleton had robbed the employees of Food Lion or that charges were pending against him for that offense. On this record, no basis existed for the jury to have known or inferred that Singleton was accused or suspected of having committed a crime at the Food Lion grocery and, except for the fact defense counsel mentioned it in his motion to exclude evidence, we would not know that Singleton was accused of having committed a crime at the Food Lion grocery. It would have been sheer fantasy and conjecture for a juror to have inferred wrongdoing from these facts. Thus, the evidence that Singleton was in Food Lion on Crater Road had some probative value and, because the evidence did not prove an unrelated crime, it had little or no prejudicial effect. Therefore, the trial judge did not abuse his discretion by admitting the evidence.

## CONFRONTATION

Singleton contends, for the first time on appeal, that he was denied his Sixth Amendment right to be confronted by his accuser. He bases his claim on the fact that one of the employee/victims of Pizza Hut was not called to testify that Singleton had abducted, robbed, and threatened him with a firearm. We will not consider a question raised for the first time on appeal, Rule 5A:18, even a constitutional question. *See Cottrell v. Commonwealth*, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991). Furthermore, it is not necessary to apply one of the exceptions to Rule 5A:18 in order to correct a miscarriage of justice. Singleton did not demonstrate good cause for having failed to raise this objection at trial. *Mounce v. Commonwealth*, 4 Va. App. 433, 436, 357 S.E.2d 743, 744 (1987).

## SUFFICIENCY OF THE EVIDENCE

As to the sufficiency of the evidence to support the abduction, robbery, and firearms convictions, the testimony of the victims, if credited by the jury, is sufficient to support all the convictions. "It is fundamental that 'the credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses.'" *Collins v. Commonwealth*, 13 Va. App. 177, 179, 409 S.E.2d 175, 176 (1991) (quoting *Schneider v. Commonwealth*, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985)). The testimony

from the victims was not inherently incredible, regardless of conflicts or the inability of one victim to make a positive identification of Singleton as the person who committed the crime. Therefore, because the evidence was sufficient, we cannot disturb the judgment of conviction on appeal. Code § 8.01-678; *Robertson v. Commonwealth*, 12 Va. App. 854, 858, 406 S.E.2d 417, 419 (1991).

*Affirmed.*

Moon, C.J., Baker, J., Koontz, J., Willis, J., Elder, J., Bray and Fitzpatrick, J., concurred.

## ADDENDUM

Cross-examination of Detective Kelleher:

Q. Now, at the time you showed these pictures to Mr. Griffin, you had Mr. Singleton in custody; is that correct?

A. Yes, sir, I did.

Q. Now, is it correct to say that he needed some additional information before he positively identified Mr. Singleton?

A. No, sir, it's not.

Q. Did he ask you for another picture?

A. After he chose Mr. Singleton's and after he signed, dated, and put the time he said, "Yes, sir." Do you have any sideviews of these guys?

Q. Did you show him sideviews of everybody?

A. No, sir, I only had Mr. Singleton, but he had already been positively identified.

Q. You didn't show him sideviews of anyone else?

A. I didn't need to. He was already positively identified.

\* \* \* \* \* \* \*

Cross-examination of Griffin:

Q. Okay. But you were a little uncertain when the officer showed you those pictures a few days after the alleged robbery?

A. The shots that he showed me were a front view, and I saw him from the sideview. Once I saw the sideview, then I recognized him.

Q. How many did he show—how long after did he show you the sideview?

A. When I was pretty sure of the gentlemen that I picked.

Q. What do you remember about the sideview features?

A. I just remember basically the chin.

Q. What about the chin?

A. It's just what I remember.

Q. Any particular features about the chin?

A. It's just what I remember.

Q. How many sideviews did you see?

A. Just one.

Q. But you saw several front views of several people; is that correct?

A. Yes, sir.

Q. But only one sideview?

A. Yes, sir.

Q. So you were not shown a sideview of several people?

A. I didn't need to see that.

A. But you were only shown one?

A. I only needed to see one.

Benton, J., with whom Barrow, J., joins dissenting.

The Commonwealth tried Singleton for a robbery that occurred at a Pizza Hut restaurant in the City of Petersburg at midnight on April 18. Two of the victims could not identify Singleton from an array of photographs shown to them after the robbery. The

third victim, who admitted that he only got a glimpse of the robber, testified that he identified Singleton after he was shown a photograph of a side view of Singleton. None of the other photographs had a side view of the subjects. At trial, when Singleton was seated next to his counsel, the third victim and one of the victims who earlier could not identify Singleton pointed to Singleton as the perpetrator. Singleton vigorously disputed that he was the robber. He and other witnesses testified in his defense that he was in North Carolina on April 18. To impeach Singleton, the Commonwealth's Attorney first cross-examined him concerning a collateral matter that involved an unrelated crime, and then the Commonwealth's Attorney called rebuttal witnesses to dispute his testimony. I would hold that the trial judge erred in permitting the Commonwealth's Attorney to impeach Singleton in this manner.

## I.

To understand Singleton's objection concerning the rebuttal testimony, several incidents of his trial testimony must be analyzed. On direct examination during his defense, Singleton testified as follows:

Q:  . . . . The first question is, "Did you rob the Pizza Hut on April the 18th."

A:  No sir. I don't even have any idea where . . . that's at.

Although no evidence had been introduced at trial concerning a Food Lion grocery store (Singleton had been indicted, but not yet tried, for robbery of the Food Lion), the Commonwealth's Attorney cross-examined Singleton concerning his knowledge of the Food Lion.

Q:  Have you ever been on Crater Road at the Food Lion?

A:  No, ma'am.

Q:  How did you get familiar with that?

A:  Through this case.

Q:  But you never been there?

A:  No, ma'am.

Singleton never denied knowing the location of Crater Road. However, the Commonwealth's Attorney sought to attack Singleton's credibility by cross-examining him concerning his knowledge of the location of that thoroughfare. On further cross-examination, she asked:

Q:  [The business in which you were planning to invest was] near Crater Road.

A:  No.

Q:  So you know where Crater Road is?

A:  Yeah.

At the close of the defense case, Singleton's evidence established that he had lived in Petersburg only three months prior to his arrest, that he did not know where the Pizza Hut restaurant was located, that he knew where Crater Road was, and that he had not been in the Food Lion grocery store on Crater Road.

In rebuttal, the Commonwealth's Attorney offered two witnesses to testify that after midnight on April 3, more than two weeks before the Pizza Hut robbery, Singleton was at the Food Lion grocery store. Singleton had been charged with the April 3 robbery of the Food Lion store but had not yet been tried for that robbery. When Singleton's counsel objected that this collateral matter impermissibly proved other crimes, the Commonwealth's Attorney stated:

Singleton indicated he was not familiar with the roads or with Crater Road in particular. Mr. Neal is being offered to rebut his answer to whether or not he was at Food Lion. *That's the only purpose for his testimony.*

(Emphasis added).

This proffer contained a misstatement of Singleton's testimony concerning Crater Road. Singleton testified that he knew the location of Crater Road. Moreover, the proffer manifestly established that the Commonwealth's Attorney raised the collateral matter of the Food Lion grocery store on cross-examination as a guise for offering two rebuttal witnesses to testify that on April 3 after midnight, when a robbery occurred, Singleton was at the Food Lion grocery store. The trial judge's ruling that allowed the proof was

erroneous for two distinct but related reasons.

## II.

Evidence that Singleton was present in the Food Lion grocery store on April 3, two weeks prior to the robbery offense that was the subject of Singleton's trial, was not relevant to the offense then being tried. Moreover, the evidence was inadmissible because it was evidence of another crime that was offered to impeach Singleton on a collateral matter. *See Seilheimer v. Melville*, 224 Va. 323, 326, 295 S.E.2d 896, 898 (1982).

A witness may not be cross-examined regarding any fact irrelevant to the issues on trial when that cross-examination is for the mere purpose of impeaching his credit by contradicting him. If such a question is inadvertently asked and answered, the witness's answer is conclusive. Furthermore, the witness may not be asked about any collateral independent fact "merely with a view to contradict him afterwards by calling another witness."

A subject is collateral to the issues on trial unless the party cross-examining the witness is entitled to prove the subject in support of his or her own case. If a fact cannot be established for any purpose other than for contradiction, it is wholly collateral to the issues on trial.

Evidence of an unrelated [crime] is generally not admissible in a criminal trial.

*Simpson v. Commonwealth*, 13 Va. App. 604, 606-07, 414 S.E.2d 407, 409 (1992) (citations omitted).

On direct examination, Singleton denied knowing the location of the Pizza Hut restaurant. The Commonwealth's Attorney asked Singleton on cross-examination if he knew where Crater Road was located. Singleton admitted that he knew where Crater Road was located. No dispute arose over whether Singleton had ever been on Crater Road. No one asked Singleton whether he had ever been on Crater Road. The majority's assertion that the location of Crater Road had a bearing on the Commonwealth's proof or Singleton's defense is not supported by the record.

Singleton's presence in the Food Lion grocery store two weeks before the robbery of the Pizza Hut restaurant was not relevant to any issue at trial. The evidence proved only that both the Pizza Hut restaurant and the Food Lion were on Crater Road. The evidence did not prove the proximity of the Food Lion grocery store to the Pizza Hut restaurant.

Furthermore, the evidence did not establish the materiality or relevance of the fact, if it be true, that both businesses were located on the same thoroughfare. Even if Singleton had been in the Food Lion grocery store after midnight on April 3, the Commonwealth did not establish that such proof tended to prove any element of the Pizza Hut robbery offense. Indeed, the Commonwealth's Attorney asserted to the trial judge that she raised the issue only to impeach Singleton.

Despite the Commonwealth's Attorney's admission in her proffer to the trial judge, the majority opinion attempts to construct a relevance argument upon the theory that Singleton's "unfamiliarity with Crater Road" disproves an element of the defense. In addition to being an after-the-fact, post-trial rationalization, the record refutes the attempt. The majority opinion simply adopts the Commonwealth's Attorney's misstatement when it asserts that "[o]n cross-examination, Singleton continued to demonstrate that he was unfamiliar with Crater Road." The record unambiguously proves that Singleton affirmatively responded when asked if he knew the location of Crater Road.

The record is equally unambiguous that the Commonwealth first injected the issue of the Food Lion grocery store in cross-examination of Singleton " 'merely with a view to contradict[ing] him afterwards by calling another witness.' " *Allen v. Commonwealth*, 122 Va. 834, 842, 94 S.E. 783, 785-86 (1918) (quoting *Langhorne v. Commonwealth*, 76 Va. 1012, 1021 (1882)). Indeed, when Singleton's counsel objected to the evidence of the other crime, the Commonwealth's Attorney did not state that she was attempting to prove an element of the offense. She clearly misstated Singleton's testimony and said she was only trying to impeach Singleton. Despite that admission, the judge allowed the Commonwealth's Attorney on rebuttal to offer evidence for the purpose of impeaching Singleton on a collateral matter. That ruling was erroneous. *See Allen*, 122 Va. at 842, 94 S.E. at 785-86.

Moreover, despite the Commonwealth's Attorney's clear admission, the majority posits that the Commonwealth had some other purpose in offering the evidence. Nothing supports the majority's assertion that "[w]hether Singleton knew the location of the Pizza Hut on Crater Road . . . has some tendency to prove that he had been correctly identified by the victims." The Commonwealth did not offer the proof for that purpose. In addition, that purpose as asserted by the majority is simply a non sequitur.

## III.

When the trial judge agreed to allow the Commonwealth's Attorney to examine witnesses in rebuttal to impeach Singleton on these collateral facts, Singleton's counsel restated his objection. He reiterated that the evidence was prejudicial, and he informed the trial judge that he would be unable to cross-examine the witnesses. Thus, Singleton's counsel made it abundantly clear to the judge and the Commonwealth's Attorney that he could not test the identification testimony of the Food Lion witnesses without bringing out the facts of that unrelated, contested robbery.

Whether proved directly or indirectly, evidence that implicates an accused in other crimes unrelated to the offense for which the accused is being tried is inadmissible because it creates confusion of issues, causes unfair surprise, and causes undue prejudice. *Boggs v. Commonwealth*, 199 Va. 478, 488, 100 S.E.2d 766, 773 (1957).

> "As he (the accused) is charged with a particular offense, he has notice to be prepared to defend himself against that charge, and that alone: he cannot be prepared to defend himself against other charges, not exhibited against him, or to maintain the integrity of his whole life, when that is not put in issue; and when it is, he cannot be prepared to account for particular instances of malconduct, of which he is not previously informed, and as to which he is not required to defend himself."

*Zirkle v. Commonwealth*, 189 Va. 862, 873, 55 S.E.2d 24, 30-31 (1949) (quoting *Walker v. Commonwealth*, 28 Va. (1 Leigh) 628, 630 (1829)). The admission of the testimony from the Food Lion employees was prejudicial because it forced Singleton's counsel to choose between (1) abandoning Singleton's right to confront and

cross-examine the witnesses against him or (2) thoroughly testing the identification testimony and, thus, proving by his own efforts the prejudicial criminal conduct that was collateral to the issues on trial. The admission of this testimony was reversible error. *See Simpson*, 13 Va. App. at 608, 414 S.E.2d at 410.

The Commonwealth disingenuously contends that the rebuttal witnesses' testimony that Singleton was in the Food Lion grocery store after midnight was not evidence of another crime. The Commonwealth's Attorney specifically asked about the *time* Singleton was seen and elicited the response, "two minutes after 12:00 a.m." Although the two witnesses who testified that Singleton was in the Food Lion after 12:00 a.m. said nothing about the robbery of the grocery store, their testimony hinted at nefarious conduct. The inquiry to the store manager concerning time was suggestive of criminal conduct. Moreover, the other witness testified that he was in the store as an employee of the company that cleaned the floors in the Food Lion. The testimony of these witnesses tended to prove Singleton's presence in that store at a late hour beyond closing and at approximately the same time the robbery occurred at the Pizza Hut two weeks later. Because the inference of an unrelated crime was strong, the testimony should not have been admitted and creates reversible error. *Id.* at 607, 414 S.E.2d at 409.

I dissent.