COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Annunziata and Senior Judge Hodges
Argued at Alexandria, Virginia


JACOB DALE MONROE
                                      MEMORANDUM OPINION* BY
v.    Record No. 1254-00-4           JUDGE WILLIAM H. HODGES
                                           OCTOBER 9, 2001
COMMONWEALTH OF VIRGINIA


          FROM THE CIRCUIT COURT OF PRINCE WILLIAM COUNTY
                   Leroy F. Millette, Jr., Judge

          William J. Baker for appellant.

          Michael T. Judge, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     Jacob Dale Monroe, appellant, was convicted of second degree

murder and shooting into an occupied building or dwelling house.

On appeal, appellant argues the trial court erred by (1) admitting

a blanket into evidence; (2) refusing to consider his challenge to

two jurors; (3) denying his objections to the Commonwealth's

cross-examination of a witness; and (4) denying his objection to

the Commonwealth's closing argument.  Finding no error, we affirm

the trial court's judgment.

                         BACKGROUND

     On December 21, 1996, Steve Pogue had a party at his

residence.  At about midnight, a group of five men, including

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

appellant, attempted to enter the party. However, Pogue would not allow the men to stay at the party. Pogue escorted one of the men outside of his house and saw that one of the other men had picked up a rock or brick. The five men initially refused to leave the property. After a brief verbal dispute with appellant, Pogue struck appellant and pushed him to the ground, and Pogue again told the men to leave his property. Several guests exited Pogue's house to assist Pogue. Appellant's companions urged him to leave the party and, as the five men walked away, one of the men yelled, "We'll be back," and "DRS will be back and pop caps in your ass." DRS is a local gang called "Dirty Rotten Scoundrels." On the night of the incident, appellant wore a shirt with DRS written on it.

Jerry McDermit, one of the men who accompanied appellant that night, testified that after they left the party, they retrieved a .38 caliber gun from Josh Morrow's residence and a shotgun from another residence. McDermit testified appellant and Morrow shared ownership of a .38 caliber gun. Appellant indicated that he wanted to return to the party and fight. The five men drove past Pogue's residence four times. As they passed for the fifth time, appellant said, "Fuck it. So let's just shoot it. Let's just do it." Appellant fired several shots from the car toward Pogue's house with the .38 caliber gun. Another member of the group fired the shotgun toward the house, striking a vehicle parked near Pogue's house. Gerald Dillard, who was seated in front of a

-

window inside Pogue's house, was shot in the head and died. The forensic evidence showed that he was shot with the .38 caliber gun owned by appellant and Morrow.

Appellant testified Morrow fired the .38 caliber gun at Pogue's residence.

### ADMISSIBILITY OF THE BLANKET

After the victim was shot, he was placed on the floor and someone placed a blanket over the victim. The Commonwealth offered the bloody blanket into evidence. The trial court admitted the blanket into evidence, ruling that the blanket depicted the crime scene and that its probative value outweighed the prejudicial impact of the evidence.

"Evidence which 'tends to cast any light upon the subject of the inquiry' is relevant." Cash v. Commonwealth, 5 Va. App. 506, 510, 364 S.E.2d 769, 771 (1988) (citation omitted). However, "[i]f the prejudicial effect of nominally relevant evidence outweighs its probative value, the evidence is inadmissible." Singleton v. Commonwealth, 19 Va. App. 728, 734, 453 S.E.2d 921, 925 (1995) (en banc).

Assuming without deciding that the bloody blanket was inadmissible, we must determine whether its admission into evidence was harmless error. A non-constitutional error by the trial court is harmless if "'it plainly appears from the record and the evidence given at the trial that' the error did not affect the verdict." Lavinder v. Commonwealth, 12 Va. App. 1003, 1005,

-

407 S.E.2d 910, 911 (1991) (en banc) (citation omitted). "An error does not affect a verdict if a reviewing court can conclude, without usurping the jury's fact finding function, that, had the error not occurred, the verdict would have been the same." Id. "Each case must . . . be analyzed individually to determine if an error has affected the verdict." Id. at 1009, 407 S.E.2d at 913.

Based on our examination of the record and evidence presented in the case, we are satisfied that the admission of the bloody blanket did not affect the verdict or otherwise deprive appellant of a fair trial on the merits. The evidence of appellant's guilt was overwhelming. Evidence was presented that appellant fired the .38 caliber weapon at the house, and the victim was killed by a .38 caliber bullet that passed through the window of the house. Moreover, the evidence of the bloody blanket was merely cumulative of the photographic evidence of the crime scene that was admitted into evidence. We can conclude, therefore, without usurping the jury's fact finding function, that, had the bloody blanket not been admitted into evidence, the verdict would have been the same. Accordingly, its admission was harmless error.

BATSON MOTION

The Commonwealth used two peremptory strikes to remove two of the three African-Americans from the jury panel. Appellant objected to the strikes, stating that the Commonwealth had to give a reason other than race for striking the potential jurors. See Batson v. Kentucky, 476 U.S. 79 (1986). The trial court ruled

-

that a Batson analysis did not apply to this case because appellant was white and the challenged jurors were black. The jury was seated and sworn, and the remaining potential jurors were released.

After opening statements, the Commonwealth's Attorney proffered for the record his reasons for striking the two challenged jurors. The prosecutor represented to the trial court that he struck the male African-American juror because the juror did not "look at counsel" during voir dire and was "unattentive" or "perhaps not willing to listen to the evidence." The prosecutor stated that he struck the female African-American juror because she had "a rather mean look on her face" and appeared "unhappy with everything." The trial court again ruled that Batson did not apply, and the court recessed for lunch.

After a break in the trial, the trial court realized that it had been mistaken in its earlier ruling that Batson was inapplicable to the issue. The trial court revisited the issue and requested that appellant reiterate the bases of the motion. See Powers v. Ohio, 499 U.S. 400, 409 (1990) (ruling that a criminal defendant may object to race-based exclusions of jurors through peremptory challenges whether or not defendant and jurors are of the same race). Appellant represented that striking two of the three African-American potential jurors was

-

"disproportionate" based on the African-American population of the area.

Assuming, without deciding, that appellant made a prima facie showing that the prosecutor exercised the two peremptory strikes on the basis of race, the prosecutor articulated racially neutral explanations for striking the jurors in question.  Indeed, the trial court stated that it too had observed that the male juror "appeared to be disinterested."

The prosecutor then elaborated on his reasons for striking the female African-American juror, stating that she "seemed like she . . . was unhappy with being here," and "did not seem [to] want to pay attention."  He stated that it appeared to be a "burden" for her to be in court and that her reactions to questions indicated to him that she would not be "receptive" to evidence "in a normal method."  The prosecutor said the potential juror appeared "bitter" and that he believed persons who are not "happy with the system don't make good jurors."  The trial court agreed that, based on its observations of the potential juror's body language and demeanor, she "did not seem to be very receptive."

"Manifestly, disinterested jurors should be identified and removed whenever possible, irrespective of race or gender."  Robertson v. Commonwealth, 18 Va. App. 635, 640, 445 S.E.2d 713, 716 (1994).  "A trial court's determination whether the reason given is race-neutral is entitled to great deference . . . and

-

will not be reversed on appeal unless it is 'clearly erroneous.'" Atkins v. Commonwealth, 257 Va. 160, 175, 510 S.E.2d 445, 454 (1999) (citations omitted).

The prosecutor offered race-neutral, nondiscriminatory reasons for striking the venirepersons. The trial court did not abuse its discretion in accepting the Commonwealth's racially-neutral explanations.

Appellant also argues that because the trial court addressed the Batson motion after the jury had been sworn and the remaining potential jurors had been released, appellant had no meaningful redress because the jury panel had already been sworn. However, the record indicates that appellant failed to present this argument to the trial court. After the trial court made its final ruling, appellant's counsel stated, "Please note our objection." Appellant offers no authority on this appeal for the proposition that he had no effective remedy after the panel was sworn.

"The Court of Appeals will not consider an argument on appeal which was not presented to the trial court." Ohree v. Commonwealth, 26 Va. App. 299, 308, 494 S.E.2d 484, 488 (1998). See Rule 5A:18. Accordingly, Rule 5A:18 bars our consideration of this question on appeal. Moreover, the record does not reflect any reason to invoke the good cause or ends of justice exceptions to Rule 5A:18.

-

CROSS-EXAMINATION OF MORROW

Appellant called Morrow, one of his codefendants, as a witness on his own behalf. Appellant argues the trial court erred in ruling that the prosecutor's cross-examination of Morrow did not exceed the scope of appellant's direct examination of the witness.

On direct examination, appellant questioned Morrow regarding statements concerning the crimes that Morrow had made to codefendants and inmates while they were incarcerated. Morrow testified that he initially asked the codefendants to go along with his story that he was asleep in the car during the shooting. Morrow also denied that he suggested that they blame the shooting on appellant and another juvenile because they were juveniles. In addition, Morrow denied telling one of the men that he fired the .38 during the shooting.

On cross-examination, the Commonwealth questioned Morrow concerning how he knew appellant and his observations of what occurred during the incident. Morrow testified that appellant fired the .38 caliber gun on the night of the shooting. Appellant repeatedly objected that the Commonwealth was exceeding the scope of cross-examination. The trial court ruled that appellant, by asking Morrow what he had told people about the incident, had opened the door to the line of questioning related to how Morrow "knows things about what happened, where he was, whether he was asleep or not." The trial court also

-

ruled that, while the Commonwealth could ask whether Morrow and appellant were members of DRS, he could not indicate what "DRS means."

On further cross-examination, Morrow testified that he and appellant were friends and were affiliated with DRS. Morrow testified concerning the events of the night of the shooting, and he stated that he saw appellant fire the .38 caliber gun. When the prosecutor attempted to show Morrow the gun, the trial court ruled that the Commonwealth could go no further with the line of questioning unless it called Morrow as its own witness.

"Subject to such reasonable limitations as the trial court may impose, a party has an absolute right to cross-examine his opponent's witness on a matter relevant to the case, which the opponent has put in issue by direct examination of the witness." Washington v. Commonwealth, 228 Va. 535, 549, 323 S.E.2d 577, 587 (1984). "'Once a [witness] has testified as to certain matters, the proper scope of cross examination lies within the sound discretion of the trial court.'" Fisher v. Commonwealth, 16 Va. App. 447, 455, 431 S.E.2d 886, 891 (1993) (citation omitted). See also United States v. Gravely, 840 F.2d 1156, 1163 (4th Cir. 1988) (citing United States v. Atwell, 766 F.2d 416, 419-20 (10th Cir. 1985) ("limiting the extent of cross-examination is within the discretion of the trial court and does not warrant reversal absent an abuse of discretion clearly prejudicial to the defendant")).

-

The limited cross-examination permitted by the trial court was within the trial court's discretion because appellant initiated the line of inquiry when he elected to question Morrow on direct examination about statements he had made concerning the crimes. When, on direct examination, Morrow denied making certain statements about the crimes, the Commonwealth was entitled to explore how Morrow knew of the crimes. Furthermore, with the exception of who fired the gun, appellant testified to many of the same facts that Morrow testified to on cross-examination concerning details of the night of the shooting, including the fact that appellant was a member of DRS. Accordingly, we cannot say that appellant suffered prejudice from the evidence elicited in the cross-examination of Morrow.

## CLOSING ARGUMENT

Appellant argues the trial court erred in overruling his objection to a statement made in the Commonwealth's rebuttal closing argument. During its rebuttal closing argument, the prosecutor argued, "If they had had these weapons at the first instant [sic] I submit to you we'd probably have a lot of dead people." Appellant objected, and the trial court overruled the objection stating, "It's a matter of argument."

> "The purpose of closing argument is to summarize the evidence for the jury, to persuade the jury to view the evidence in the light most favorable to the client, and to apply that evidence to the law in a manner which will result in a verdict favorable to the client."

-

Canipe v. Commonwealth, 25 Va. App. 629, 639, 491 S.E.2d 747, 751 (1997) (quoting Charles E. Friend, The Law of Evidence in Virginia § 21-1(b)(1) (4th ed. 1993)).  "A trial court has broad discretion in the supervision of . . . closing argument."  O'Dell v. Commonwealth, 234 Va. 672, 703, 364 S.E.2d 491, 509 (1987).  "'This Court will not interfere with the exercise of this broad discretion unless it affirmatively appears that such discretion has been abused and that the rights of the complaining litigant have been prejudiced.'"  Canipe, 25 Va. App. at 639, 491 S.E.2d at 752 (citation omitted).  "'In rebuttal argument, a prosecutor has the right to answer the argument made by defense counsel and to refer to evidence and fair inferences suggested by the evidence touching the subjects covered by the adversary.'"  Clark v. Commonwealth, 3 Va. App. 474, 483, 351 S.E.2d 42, 46 (1986) (citation and emphasis omitted).

Appellant argued in his closing argument that Pogue's house had not been "sprayed" by gunfire and that "unfortunately, the bullet struck the house."  The evidence at trial showed that appellant and his companions drank alcoholic beverages earlier that evening before attempting to attend the party.  They were not invited and knew none of the people in the house.  After one of appellant's companions attempted to enter Pogue's house, a confrontation occurred in which one of appellant's companions picked up a rock.  When appellant and his companions returned to the Pogue residence the second time, they fired several shots

-

toward Pogue's house, striking a vehicle parked in the driveway, the house, and the victim through a window of the house.

In view of the deadly consequences that occurred after the initial confrontation, the trial judge did not abuse his discretion in ruling that the prosecutor could properly argue that had a gun been fired during the initial heated confrontation, the people who were standing outside the residence and openly exposed could have been killed. The argument was based on evidence presented and fair inferences suggested by the evidence. Accordingly, the trial court did not abuse its discretion in overruling appellant's objection.

Therefore, the trial court's judgment is affirmed.

<u>Affirmed.</u>