COURT OF APPEALS OF VIRGINIA

Present:  Judges Elder, Clements and Haley
Argued at Chesapeake, Virginia


WALTER LEE DUPREE, JR.

                                                     MEMORANDUM OPINION[*] BY
v.       Record No. 2682-04-1            JUDGE JAMES W. HALEY, JR.
                                                     DECEMBER 28, 2005

COMMONWEALTH OF VIRGINIA



FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Thomas S. Shadrick, Judge

Keith Loren Kimball (Colgan, Kimball & Carnes, on briefs), for
appellant.

John H. McLees, Senior Assistant Attorney General (Judith Williams
Jagdmann, Attorney General, on brief), for appellee.


Walter Lee Dupree appeals from his convictions by jury of three counts each of malicious

wounding and use of a firearm in the commission of a felony. Appellant contends the trial court

erred in ruling that the defense could not impeach its own witness with a prior inconsistent

statement. Despite finding error in the trial court's ruling, we affirm the convictions.

I.

Initially, we note the following:

> The jury's verdict will not be disturbed on appeal unless plainly
> wrong or without evidence to support it. Upon familiar principles,
> we view the evidence in the light most favorable to the
> Commonwealth, granting to it all reasonable inferences fairly
> deducible therefrom.

Ragland v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993); Traverso v.

Commonwealth, 6 Va. App. 172, 176, 366 S.E.2d 719, 721 (1988).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

II.

On March 31, 2002, three men drove by and shot into a crowd gathered in front of the Twin Canal Village Apartments in Virginia Beach. Three residents, Andrea Logan, Jamar Mayo, and Lena Knox, were wounded. Another resident, Vashawn Williams, witnessed the incident. Each testified that the shooter sat in the front passenger side of the vehicle.

Logan testified that "[she] seen the guy that was in the passenger side lean up and lean over the guy that was in the driver's side and start shooting." She identified Dupree as this individual. Logan testified that she

> could see [Dupree's] face when he was shooting . . . because the way the window was rolled down, he was looking directly at - - directly the way we were standing, he was looking. So I could see him good. . . . When he was shooting, he was looking directly at us. I'm looking directly in his eyes when he was shooting.

Logan testified that Dupree was wearing a "black hoodie" at the time of the incident.

Mayo testified that he saw the shooter's face and identified Dupree "[b]ecause [he] remember[ed] his face." Mayo testified, "I remember seeing his face when they was out there, and I remember that day when he was walking around - - a new face - - and I saw 'em a few times before the incident happened." Mayo also said that Dupree wore a "black hoodie."

Williams also identified Dupree as the shooter. She testified, "I remember seeing his face that morning." In response to being asked how she could remember his face, she testified, "Just seeing his face and seeing - - and memory. I mean it's my first time being shot at. You can't forget a face when somebody shoots at you." Williams also testified that he wore a "black hoodie."

Knox testified that, upon hearing a commotion in front of her apartment, she looked outside and saw the passenger of the car lean over the driver and shoot into the crowd. A bullet passed through the wall and struck her in the right knee. She was unable to identify the shooter.

Detective Glenn Sostak testified that, during an interview at Virginia Beach General Hospital, Logan told him that the shooter wore a "gray coat," had "a lot of hair[,] and big lips." He also testified that Mayo told him that the shooter wore a "gray sweater with black jeans." On cross-examination, Logan testified that she might have told Detective Sostak that the shooter had on a gray coat; Mayo did not remember what he told Sostak. Sostak also testified that none of the witnesses who made an in-court identification of Dupree could identify him during a photo lineup.

Appellant called Patrice Greene as his first witness and asked her what the front passenger was "wearing up top in terms of a jacket." Greene responded, "Black hoodie." Counsel attempted to impeach her testimony with a prior inconsistent statement and noted, "I spoke with this witness this morning before any witnesses were sworn; and I expected testimony consistent with what she told the detective in this matter, which was that the shooter was wearing a gray coat." Counsel argued that Greene's answer surprised him thus making her adverse and open to impeachment. In response to a question asked outside the presence of the jury, Greene testified that "[she] was walking across the street toward where they was at, and then [she] heard the gunshots, and [she] stopped."

The trial judge, in response to defense counsel's argument, stated, "It appears to me that you're calling somebody just to impeach them [sic]." The trial court sustained the objection to counsel's attempt to impeach Greene. The jury convicted Dupree of all charges, whereupon he appealed to this Court.

## III.

Code § 8.01-403 states in pertinent part:

> A party producing a witness shall not be allowed to impeach his credit by general evidence of bad character, but he may, in case the witness shall in the opinion of the court prove adverse . . . prove that he has made at other times a statement inconsistent with his present testimony . . . . In every such case the court, if requested by either party, shall instruct the jury not to consider the evidence

of such inconsistent statements, except for the purpose of contradicting the witness.

As this Court stated in Smallwood v. Commonwealth, 36 Va. App. 483, 553 S.E.2d 140 (2001):

One is not permitted to impeach his own witness merely because the latter does not come up to his expectation. It is only when the testimony of the witness is injurious or damaging to the case of the party introducing him that the witness can be said to be adverse so as to justify his impeachment. If the testimony is of a negative character and has no probative value, there is no need to discredit the witness.

Id. at 489, 553 S.E.2d at 143 (quoting Virginia Electric and Power Co. v. Hall, 184 Va. 102, 105-06, 34 S.E.2d 382, 383 (1945)).

Here, defense counsel explained that Greene's answer surprised him, because she had given a prior inconsistent statement to both him and police. The Commonwealth, in its brief, concedes that Greene's testimony had probative value, and the trial court erred by not allowing counsel to impeach her testimony. However, the Commonwealth contends that, because of the three in-court identifications of the appellant as the shooter, the error was harmless. Thus, we must determine whether this constitutes reversible error.

IV.

Appellant asserts on appeal that, in denying him the right to impeach his own witness, the trial court committed a constitutional error. However, appellant never raised this issue at trial. "We will not consider a question raised for the first time on appeal, Rule 5A:18, even a constitutional question." Singleton v. Commonwealth, 19 Va. App. 728, 735, 453 S.E.2d 921, 926 (1995) (*en banc*). See also Cottrell v. Commonwealth, 12 Va. App. 570, 574, 405 S.E.2d 438, 441 (1991).

We therefore examine whether the trial court's error was harmless under the non-constitutional standard. The Virginia Supreme Court recently outlined this standard in Rose v. Commonwealth, 270 Va. 3, 613 S.E.2d 454 (2005), as follows:

When deciding whether non-constitutional error is harmless in the context of a criminal proceeding, we must apply Code § 8.01-678 that states in pertinent part:

"When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . for any . . . defect, imperfection, or omission in the record, or for any error committed on the trial."

We stated in Clay v. Commonwealth, 262 Va. 253, 259, 546 S.E.2d 728, 731 (2001) that "in a criminal case, it is implicit that, in order to determine whether there has been 'a fair trial on the merits' and whether 'substantial justice has been reached,' a reviewing court must decide whether the alleged error substantially influenced the jury. If it did not, the error is harmless."

270 Va. at 11-12, 613 S.E.2d at 458. As stated in Rose, the Virginia Supreme Court adopted the harmless error test outlined in Kotteakos v. United States, 328 U.S. 750 (1946):

"If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand."

Id. at 12, 613 S.E.2d at 458 (quoting Kotteakos, 328 U.S. at 764-65). See also Gonzales v. Commonwealth, 45 Va. App. 375, 384-85, 611 S.E.2d 616, 620 (2005) (*en banc*).

Here, three of the Commonwealth's witnesses, Williams, Logan, and Mayo, testified that they specifically remembered seeing the shooter's face, and each identified Dupree as the shooter. Logan testified that she looked "directly in his eyes when he was shooting." Likewise, Williams "remember[ed] seeing his face" and testified, "You can't forget a face when somebody shoots at you." Thus, these eyewitnesses based their in-court identifications on face recognition, not clothing.

Though not a basis for the in-court identifications, the issue of the shooter's clothing was before the jury prior to Patrice Greene's testimony. Detective Sostak testified that during an initial interview both Logan and Mayo told him the shooter was wearing a gray coat. Logan testified that she might have given this description, while Mayo testified that he did not remember giving this description.

Greene testified that, just prior to the shooting, she began to walk across the street toward the other witnesses; this made her unable to directly view the defendant's face. Her testimony, therefore, was relevant only to the clothing issue as she was unable to identify the shooter's face. The jury considered the discrepancy in the testimony and resolved it by crediting the witnesses' testimony that they saw the shooter's face. An impeachment of Greene on the clothing issue, therefore, could not have substantially influenced the jury, because the jury resolved the only issue on which her testimony was relevant.

Moreover, as applied to a non-party witness, "Prior inconsistent statements admitted for impeachment may not be used to prove the truth of their contents." Wells v. Commonwealth, 32 Va. App. 775, 783, 531 S.E.2d 16, 20 (2000). Thus, even if the trial court had allowed counsel to impeach Greene, her testimony would only be admissible to contradict her own statement and not the three other witnesses who identified Dupree by his face and testified he wore a "black hoodie." Under the standard quoted above, we hold the trial court's error harmless.

Affirmed.

Elder, J., dissenting:

I agree with the majority that the trial court's refusal to allow appellant to impeach witness Patrice Green was error. However, I disagree with the majority's conclusion that the error was harmless. Thus, I respectfully dissent.

In determining whether an error is harmless, we review "the record and the evidence and evaluate the effect the error may have had on how the finder of fact resolved the contested issues." Lavinder v. Commonwealth, 12 Va. App. 1003, 1007, 407 S.E.2d 910, 912 (1991) (*en banc*). Non-constitutional error is harmless if other evidence of guilt is so "overwhelming" and the error so insignificant by comparison that we can conclude the error "failed to have any 'substantial influence' on the verdict." United States v. Lane, 474 U.S. 438, 450, 106 S. Ct. 725, 732, 88 L. Ed. 2d 814, 826 (1986) (quoting Kotteakos v. United States, 328 U.S. 750, 765, 66 S. Ct. 1239, 1248, 90 L. Ed. 2d 1557, 1567 (1946)); see Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (adopting Kotteakos harmless error standard); see also Rose v. Commonwealth, 270 Va. 3, 12, 613 S.E.2d 454, 459 (2005) (applying Clay-Kotteakos standard to hold that erroneous admission of other crimes evidence was harmless because evidence of guilt, including defendant's confession to numerous witnesses, was "overwhelming").

Here, I do not believe we can conclude, without usurping the trial court's fact-finding function, "'that the error did not influence the [fact finder], or had but slight effect.'" Clay, 262 Va. at 260, 546 S.E.2d at 731 (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. 2d at 1566). The majority correctly notes that "the issue of [discrepancies regarding] the shooter's clothing was before the jury prior to Patrice Greene's testimony" and that the jury "resolved [the issue] by crediting the witnesses' testimony that they saw the shooter's face." Although the jury apparently based its verdict on the in-court testimony of Logan, Mayo, and

Williams in which they identified appellant as the perpetrator, the record does not support the conclusion that the jury would have reached the same result if it had been aware that Greene, like Logan and Mayo, had made prior inconsistent statements regarding what the perpetrator was wearing.

Logan and Mayo made their prior inconsistent statements to police officers on the day of the crime. Greene made a similar prior inconsistent statement to police on the day of the crime. However, she also made that same inconsistent statement--that the shooter was wearing a "gray coat"--to appellant's counsel *on the morning of trial* and testified only hours later that the perpetrator had, instead, worn a "[b]lack hoodie." The admission of Greene's two prior inconsistent statements and the timing of those statements would have provided greater factual support for the argument that witnesses, including Greene, had colluded with one another or some third party to testify, consistently with one another, that the shooter wore a black hoodie instead of a gray coat, as they had first reported. Thus, I do not believe we can determine, without usurping the jury's fact-finding function, that testimony regarding Greene's conflicting statements on this issue would not have "'influence[d] the [fact finder]'" or would have "'had but slight effect,'" id. (quoting Kotteakos, 328 U.S. at 764, 66 S. Ct. at 1248, 90 L. Ed. 2d at 1566).

Because I do not believe the record supports the majority's conclusion that the trial court's error was harmless, I respectfully dissent.